SAVE-MOR SUPERMARKETS, INC. & others *vs.* SKELLY DETECTIVE SERVICE, INC. & others
(and three companion cases [1]).

Middlesex. October 7, 1970. — April 9, 1971.

Present: SPALDING, CUTTER, SPIEGEL, REARDON, & QUIRICO, JJ.

*Insurance,* Theft insurance. *Words,* "In attendance."

Under a policy insuring against liability of the insured to its customers for loss of money and securities in transport by armored car of the insured, subject to the condition "that at least one armed guard shall be in attendance when the property . . . is contained in an armored car," compliance with the condition was not shown where it appeared that two armed employees of the insured, a driver and a guard, left

---

[1] The cases involved and the parties to each are the following:

| Docket Number * | Names of Plaintiffs | Names of Defendants |
| --- | --- | --- |
| 1. M–28056 | Save-Mor Supermarkets, Inc. | Skelly Detective Service, Inc. (Skelly) |
| | Elm Farm Foods Co. | The Institute of Lloyds Underwriters (Lloyds) |
| | First National Stores, Inc. | Fall River National Bank |
| 2. M–28580 | Foodmaster of Fellsway, Medford, Inc. | Skelly Lloyds |
| 3. M–29478 | King's Department Store of Quincy, Inc. | Skelly Lloyds Employers' Surplus Lines Insurance Company (Employers) |
| 4. S–87493 | Stop & Shop, Inc. Bradlees, Inc. | Skelly Lloyds Employers |

* These are Superior Court docket numbers.

an armored car containing customers' money and securities about ten and one-half feet from the entrance of a store and about twenty-five feet from a snack bar therein, that the employees went to the snack bar, from which they could see through a glass window a portion of the car, and that the guard ran out and shot at the car when he saw it being driven away by a thief; and the insurer was not liable under the policy for losses sustained by the insured's customers through the theft.

FOUR BILLS IN EQUITY filed in the Superior Court on May 19, 1967, December 19, 1967, November 29, 1968, and September 13, 1967.

The suits were heard by *Linscott, J.*

*Harold Lavien* for Save-Mor Supermarkets, Inc. & another.

*Will J. Bangs* for First National Stores, Inc. (*Joseph L. Cotter*, for Stop & Shop, Inc. & others, with him).

*Thomas D. Burns* for Jack Norman Creswell, substituted for The Institute of Lloyds Underwriters, & another.

QUIRICO, J. These are four bills in equity brought by seven plaintiffs against four defendants. The plaintiffs are business corporations operating retail food and department stores. The defendants are (a) Skelly Detective Service, Inc. (Skelly), a corporation engaged in the business of transporting money, checks and securities by armored car, (b) its two insurers, The Institute of Lloyds Underwriters (Lloyds),[2] and Employers' Surplus Lines Insurance Company (Employers),[3] and (c) a bank. In each bill one or more plaintiffs seek to establish the liability of Skelly to each of them for a loss incurred when an armored car belonging to Skelly was stolen at a time when it was transporting money of the plaintiffs. Each bill also seeks to reach the obligation of one or both of the insurers, Lloyds and Employers, to Skelly under policies insuring Skelly for liability to its customers

---

[2] By stipulation filed in each case, Jack Norman Creswell was substituted for the defendant The Institute of Lloyds Underwriters, all parties agreeing that any final determination or judgment against Creswell shall be binding on the plaintiffs and all of the Underwriters at Lloyds in proportion to their participation in the Lloyds policy.

[3] Employers issued a Certificate of Participation to the extent of 22.9446% of the total limits of liability assumed by Lloyds under its policy. Employers' liability, to the extent of its participation, is therefore to be determined by the terms and conditions of the Lloyds policy.

for loss of their money and securities in transport, and to apply such obligation of the insurers to the indebtedness of Skelly to the plaintiffs.

The four cases were consolidated for trial, and the testimony of witnesses at the trial was ordered reported under G. L. c. 214, § 24. After trial the judge filed a document entitled "Findings, Rulings and Order for Decree" which applied to all four cases. When the judge was requested to report the material facts found by him, he adopted that document as the required report. G. L. c. 214, § 23. The trial judge found that the defendant Skelly was indebted to each plaintiff. He made detailed findings of facts with reference to the theft of Skelly's armored truck and the money and securities of the plaintiffs contained therein, and then concluded that the loss was not one for which Lloyds was liable under its policy. He entered a final decree in each case declaring the indebtedness of Skelly to the plaintiff or plaintiffs,[4] and dismissed the bill as against all other defendants. The cases are before us on the consolidated appeals of all of the plaintiffs from the final decrees.

The record before us includes the trial judge's report of material facts found by him, the exhibits introduced at the trial, and portions of the transcript designated by the parties under S. J. C. Rule 1:02, 351 Mass. 732–733. "Since such designated testimony is before us, it is our duty to examine it and decide the issues according to our judgment as to the facts and the law, giving due weight to the findings of the judge which will not be reversed unless plainly wrong." *LeBlanc* v. *Molloy*, 335 Mass. 636, 637. *Hanrihan* v. *Hanrihan*, 342 Mass. 559, 564. *Sulmonetti* v. *Hayes*,

---

[4] The indebtedness of Skelly to each plaintiff was found to be as follows:

| | |
|---|---|
| First National Stores, Inc. | $143,539.67 |
| Elm Farm Foods Co. | 46,132.89 |
| Save-Mor Supermarkets, Inc. | 128,699.06 |
| Stop & Shop, Inc. and Bradlees, Inc. | 69,089.00 |
| Foodmaster of Fellsway, Medford, Inc. | 16,871.53 |
| King's Department Store of Quincy, Inc. | 7,881.33 |

Each decree also ordered Skelly to pay interest to the plaintiffs in an amount computed to the date of the decree.

347 Mass. 390, 391–392.  We summarize the pertinent findings of the trial judge.

On April 1, 1967, Skelly was transporting money and securities of each of the plaintiffs under contracts for hire which provided that Skelly assumed the "entire liability for any loss of any shipment" up to an amount which as to each plaintiff exceeded the claim of such plaintiff in these cases.  On that date an armored truck in which Skelly was transporting money and securities of the plaintiffs was stolen.  The money and securities were never found, and the plaintiffs have received no payment from Skelly for their losses.

At the time of the theft Skelly was insured against such an occurrence under a policy issued by Lloyds.  The policy contained the following provision under the heading "Conditions":  "2. It Is Agreed by the Assured that at least one armed guard shall be in attendance when the property . . . [money or securities] is contained in an armored car or non-armored car."  The words "armored car" apply to Skelly's armored truck which was stolen.

On the evening of the theft Skelly's employees, consisting of a driver and a guard, both armed, had driven the armored truck to a shopping center in Quincy and stopped it in front of the store of the plaintiff King's Department Store of Quincy, Inc.  The guard went into the store to pick up some money and securities which he placed in the truck about 8:45 P.M.  Both men then left the truck and went to the snack bar in the store to eat.  When they left the truck, the ignition key was left in its position in the ignition, the rear door was locked and bolted from the inside, and the two side doors were locked but not bolted.  The distance from the truck to the store entrance was about ten and one-half feet, and from the truck to the point where the two men were standing at the snack bar it was about twenty-five feet.  By turning to their left they could look through the glass front of the store and see the truck which was parked with its right side toward them.  About eight minutes after they left the truck to go to the snack bar, someone entered the

truck by unlocking the door on the driver's side and drove it away. From his position at the snack bar the guard saw the truck move away. He ran out and fired two shots at the truck but it did not stop. When it was found about an hour later, the money and securities were gone.

All of the findings made by the trial judge were supported by the evidence before him, and they were "not wrong, much less plainly wrong." *Farrell* v. *Branconmier*, 337 Mass. 366, 368.

The question for decision is whether on the facts summarized above, Skelly as the insured, complied with the condition of the Lloyds policy "that at least one armed guard shall be in attendance when the property . . . [money or securities] is contained in an armored car or non-armored car." The trial judge's decision on this was as follows: "I rule that in attendance in the policy means to be present with and near at hand to the armored truck in pursuance of duty for the purposes of looking after and protecting the vehicle and its contents. I rule further that while in attendance does not necessarily mean physical presence on the armored truck, it does mean being a great deal closer to the armored vehicle than standing at a snackbar at a distance of about 25 feet; and that in attendance in the policy means presence of an employee at or so near the armored truck that his being there may act as a deterrent to the stealing of the truck and/or its contents."

The plaintiffs argue that the words "in attendance" as used in the condition of liability in the Lloyds policy are ambiguous; and they ask us therefore to apply the familiar rule that if an insurer uses ambiguous words in drafting a policy, doubts as to the intended meaning of the words must be resolved against the insurer and in favor of the insured. *August A. Busch & Co. of Mass. Inc.* v. *Liberty Mut. Ins. Co.* 339 Mass. 239, 243. *MacArthur* v. *Massachusetts Hosp. Serv. Inc.* 343 Mass. 670, 672. *Whitney* v. *American Fid. Co.* 350 Mass. 542, 544. We do not agree that the cases before us are governed by that rule.

In our view, the words "in attendance" are not ambigu-

ous, and they must therefore be construed in their usual and ordinary sense. They are words in common use and we must give to them the meaning intended when they are used by ordinary men. *Ober* v. *National Cas. Co.* 318 Mass. 27, 30. *Sherman* v. *Employers' Liab. Assur. Corp. Ltd.* 343 Mass. 354, 356. *McMahon* v. *Monarch Life Ins. Co.* 345 Mass. 261, 264–265. See G. L. c. 4, § 6, Third. The rules which govern the interpretation of language in an insurance policy are the same rules which govern the interpretation of language in written contracts generally. In either case we must ascertain "the fair meaning of the language used, as applied to the subject matter." *Oakes* v. *Manufacturers' Fire & Marine Ins. Co.* 131 Mass. 164, 165. *Foster* v. *Lee*, 271 Mass. 200, 205. *Trustees of Thayer Academy* v. *Corporation of the Royal Exch. Assur. of London*, 281 Mass. 150, 155.

The responsibility for construing the language of the Lloyds policy was that of the trial judge originally, and now it is ours. The words "in attendance" are not to be construed in isolation, but only as a part of the entire insurance policy. The policy limits of liability for money or securities being transported range from a low of $25,000 to a high of $1,000,000, depending on the degree of security surrounding the particular method of transportation and the corresponding risk involved. The highest limit of such liability is subject to the condition that "at least one armed guard shall be in attendance." That condition is of significance in view of that high limit of liability. It is fair to assume that either the coverage would be lower or the premium would be higher if no armed guard were required to be "in attendance." Lloyds did not assume unconditional liability up to $1,000,-000 for money stolen while it was in an armored car of Skelly. It assumed that liability only on condition that "at least one armed guard shall be in attendance."

We hold that there was no armed guard in attendance when Skelly's armored car and its contents were stolen on April 1, 1967. The construction given to the words "in attendance" by the trial judge was adequate for the purposes of these cases, and it was correct. We reject the argu-

ment of the plaintiffs that the policy required no more than the presence of an armed guard in a place or position from which he had the armored truck in his sight. If the parties had intended that, they could have used that language. They did not do so, and we cannot distort the plain policy language to give it that construction. It is not necessary for us, nor was it necessary for the trial judge, to speculate on where, or how much closer to the armored truck, the two employees of Skelly should have been in order to be "in attendance" on the truck. It is sufficient to say that by no permissible construction of the words were they "in attendance" when they were twenty-five feet away from the truck, eating at a snack bar inside the store, with a limited view of only a portion of the truck.

In arriving at our decision we have considered the many decisions from other jurisdictions which were cited by counsel for the plaintiffs, and only one of which is by a court of last resort.[5] They are not controlling, and to the extent that they are persuasive they tend to support the position of the defendants Lloyds and Employers. No useful purpose would be served by any attempt by us to analyze, distinguish or otherwise discuss those decisions.

Our conclusion on the issue discussed above is decisive of all of the cases in favor of the defendants Lloyds and Employers. We therefore do not reach their additional contention that Skelly violated a provision of the Lloyds policy which required Skelly to maintain a blanket fidelity bond on all of its employees.

In each of the four cases the final decree is affirmed with costs of appeal to the defendants Lloyds and Employers.

*So ordered.*

---

[5] *Grimes* v. *Maryland Cas. Co.* 300 Ill. App. 62. *London* v. *Maryland Cas. Co.* 210 Minn. 581. *William Kinscherf Co. Inc.* v. *Saint Paul Fire & Marine Ins. Co.* 234 App. Div. (N. Y.) 385. *Buffalo Smoketeria, Inc.* v. *Metropolitan Cas. Ins. Co.* 143 Misc. (N. Y.) 894. *Dreiblatt* v. *Taylor,* 188 Misc. (N. Y.) 199.