ANGELO PANESIS & another *vs.* LOYAL PROTECTIVE LIFE
INSURANCE COMPANY.

Suffolk.     October 14, 1976. — January 31, 1977.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Insurance,* Health insurance, Construction of policy.  *Practice, Civil,* Review of interlocutory action.  *Words,* "Attending an accredited school or college," "Totally dependent," "Totally disabled," "Hospital."

In an action against an insurer to obtain a declaratory judgment that the plaintiff's son was a covered dependent within the terms of a group health insurance policy, evidence that the son had registered at a university, received his identification number and signed up for courses for the fall term before he fell ill during the summer was sufficient to warrant a finding that he was "attending an accredited ... college" within the meaning of the policy. [70-72]
In an action against an insurer to obtain a declaratory judgment that the plaintiff's son was a covered dependent within the terms of a group health insurance policy, evidence that the plaintiff paid for his son's tuition and expenses while he was attending college, that

the plaintiff provided the son's board, room, and medical expenses while he was living at home, and that the plaintiff paid for all the son's living expenses when he was hospitalized warranted a finding that the son was "totally dependent on [the plaintiff] for support" within the meaning of the policy even though the son had been temporarily employed for a brief period prior to his illness. [72-73]

There was no merit to an insurer's contention that a psychiatric hospital which treated all types of psychiatric patients including some alcoholics or drug addicts was not, as a matter of law, a hospital under the terms of a health insurance policy which defined a hospital as "an institution . . . which is not other than incidentally a place for alcoholics or drug addicts." [73-74]

In an action against an insurer to recover medical expenses of the plaintiff's covered dependent under a group health insurance policy which provided for a continuation of benefits if the dependent was totally disabled at the time the policy was terminated, evidence that a month before the policy's termination date the dependent was hospitalized and would be unable to work for an undetermined period of time, that at the time of trial ten months later the dependent was still incapable of functioning outside a hospital environment, and that he had been continuously hospitalized during this period was sufficient to permit an inference that at the date of the policy's termination the dependent had been "totally disabled" within the meaning of the policy. [74-75]

In a civil action, a declaratory judgment that the plaintiff's son was "a covered dependent" within the meaning of a group health insurance policy and that the insurer was "liable to pay for all of [the dependent's] medical expenses to the extent that said expenses are covered expenses under the policy" was consistent with the jury's answer to special questions. [75]

A refusal to grant summary judgment is not a final judgment and is not subject to review unless it has been properly reported by the trial judge. [75-76]

CIVIL ACTION commenced in the Superior Court on October 27, 1975.

The case was tried before *Mitchell, J.*

*Peter D. Cole* for the defendant.

*Patrick J. King* (*David Rapaport & Michael S. Gardener* with him) for the plaintiffs.

BROWN, J.   This action was brought by Angelo Panesis (Angelo) and his son (Steven) against their insurer to obtain a declaratory judgment that the son was a "covered dependent" within the terms of a group health insurance policy. The plaintiffs also sought to recover the cost of the son's past and future medical expenses, and alleged (1) a breach of the policy contract and (2) an unfair and

deceptive trade practice under G. L. c. 93A.[1] On the defendant insurer's motion, all claims except that for breach of contract were severed for a nonjury trial. The case was submitted to a jury on four special questions[2] pursuant to Mass.R.Civ.P. 49(a), 365 Mass. 812 (1974). See *McCue v. Prudential Ins. Co. of America,* 371 Mass. 659, 665 (1976). The jury found in favor of the plaintiff on each question, and the judge then made a special finding of damages for the plaintiff in the amount of $31,914 on which judgment was entered. With respect to the claim for declaratory relief, the judge made a subsequent ruling, based on the transcript of evidence at the jury trial and a copy of the policy, that the son was a "covered dependent," and judgment was entered to that effect. The claim under G. L. c. 93A has not yet been tried. The defendant appeals from the judgment on the contract claims, and asserts error in the denials of its motions for summary judgment and a directed verdict. It also appeals from the judgment of the court on the plaintiffs' claim for declaratory relief.[3]

From the evidence before it the jury could have found the following facts. Angelo's employer, Coca Cola Bottling Company of Cape Cod, Inc., purchased a group health insurance policy issued by the defendant Loyal Protective Life Insurance Company. The policy, which became effective May 1, 1973, provided coverage for dependents of

---

[1] A claim to recover damages for emotional distress suffered by the father and the defendant's counterclaims are not before us.

[2] These questions were specifically directed toward ascertaining whether (1) Steven at the time he became ill was "attending" college; (2) Steven was "totally dependent" on his father during the period of his illness; (3) at the time the policy was terminated Steven was "totally disabled" under the policy definition; and (4) the facility presently treating Steven was a "hospital" within the policy definition.

[3] A single justice granted the defendant's assented to motion for immediate appellate review with respect to these matters only. See *Foreign Auto Import, Inc.* v. *Renault Northeast, Inc..* 367 Mass. 464, 470 (1975). The defendant has attempted to argue that the judge erred in refusing to grant summary judgment on its chapter 93A claim. See part 6, *infra.*

employees. Dependents were defined, among others, as persons "nineteen years of age but under 25 years of age, unmarried, attending an accredited school or college and totally dependent on the employee for support." The policy further provided that coverage would be limited to persons who were being treated at a "hospital," which was defined in the policy as "an institution ... which is not other than incidentally a place for alcoholics or drug addicts . . .."

In late July, 1973, Angelo's son Steven suffered a severe emotional breakdown, and since that time he has been in a succession of mental hospitals except for brief periods during which he discharged himself against doctor's advice and the wishes of his family. In April, 1975, Steven was admitted to The Institute of Living ("a private non-profit psychiatric hospital"), and he was still a patient at the time of trial in February, 1976.

Prior to the breakdown Steven had been enrolled at Colgate University, and he had finished two years by May, 1972. Steven took a leave of absence during the fall of 1972 (which Steven's father testified had been precipitated by emotional problems which had caused Steven to have difficulty with his courses the previous semester), but he returned to Colgate the following semester (February, 1973). After two weeks Angelo withdrew Steven from Colgate. (Angelo had paid, at that time, a substantial tuition bill.) Steven began seeing a private psychotherapist in March, 1973, on a weekly basis, and continued doing so until June, 1973.[4] In March, 1973, Steven made application for transfer to and was accepted at the University of Massachusetts (at Boston). He received transfer credits for his course work at Colgate. Steven's registration fees were paid, and he was given course assignments for the fall term. In August, 1973, at his son's request, Angelo wrote to the University of Massachusetts and asked that the effective date of Steven's entrance into the University

---

[4] The father personally paid for this phase of Steven's treatment. The plaintiffs did not seek reimbursement for these expenditures.

be postponed for a semester because of Steven's ill health.[5] Angelo wrote to the University of Massachusetts on five subsequent occasions (December, 1973; May, 1974; August, 1974; December, 1974; May, 1975), and in each letter he indicated that Steven's doctor had advised him against entry into the University that semester.[6] In each instance the University permitted Steven to postpone his entrance and continued to list him as an active student.[7] From March, 1973, through July, 1973, Steven was employed by the Commonwealth as a seasonal worker (laborer) at the Sandwich State Game Farm.[8]

The defendant paid for all hospitalization expenses which Steven incurred between August, 1973, and March, 1975. On or about May 1, 1975, the father's employer cancelled its group health insurance policy with the defendant, effective June 1, 1975. The policy provided for a continuation of benefits for a period of two years to a covered person if the person was "totally disabled" at the time the policy terminated. On July 30, 1975, the defendant claimed that Steven was not a covered dependent and, accordingly, refused to pay any medical expenses incurred since Steven had been admitted to The Institute of Living in April, 1975.

1. The defendant contends that the trial judge should have granted its motion for summary judgment or directed a verdict in its favor on the issue of whether Steven was "attending an accredited school or college" within the

---

[5] Angelo also wrote an earlier letter in August, 1973, indicating that "an opportunity to travel to Europe" in the fall was the basis for the deferment.

[6] Angelo testified that he wrote all of the letters, but Steven "provided the information that went into" them.

[7] From the evidence before it, the jury could have found that the university refused to grant Steven another deferment but that this refusal was retracted after a telephone conversation with the father.

[8] There was some evidence that Steven also worked for brief periods as a bank teller (five to six weeks in January and February, 1974), real estate broker (some weekends in the spring of 1973), "panhandler" (January, 1975), and department store clerk (fall of 1972).

meaning of the insurance policy contract. A motion for summary judgment should be granted only if there is no genuine issue of material fact. Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). *John B. Deary, Inc.* v. *Crane,* 4 Mass. App. Ct. 719, 722 (1976). See *Community Natl. Bank* v. *Dawes,* 369 Mass. 550, 553-556 (1976). In considering the appropriateness of the trial judge's denial of the motion for a directed verdict, we view the evidence on appeal in the light most favorable to the plaintiff. *Carr* v. *Arthur D. Little, Inc.* 348 Mass. 469, 471 (1965). *Lee* v. *Allied Sports Associates, Inc.* 349 Mass. 544, 545 (1965). *Randolph* v. *Five Guys From Boston, Inc.* 354 Mass. 730, 731 (1968). It is not error to deny a motion for a directed verdict "if there can be found anywhere in the entire evidence any set of circumstances that will support a reasonable inference in favor of the plaintiff." *Mazzaferro* v. *Dupuis,* 321 Mass. 718, 719 (1947). See *Kelly* v. *Railway Exp. Agency, Inc.* 315 Mass. 301, 302 (1943); *Aetna Cas. & Sur. Co.* v. *Giesow,* 412 F. 2d 468, 471 (2d Cir. 1969).

Ample evidence was presented from which the jury could conclude that Steven had transferred from Colgate University to the University of Massachusetts in March, 1973, and was in fact "attending" the University of Massachusetts in the summer of 1973, when his mental illness forced him into the hospital. Steven had registered at the University of Massachusetts, received his identification number and signed up for courses. There was nothing more Steven could do to continue his education until classes should resume in the fall. Certainly, a reasonable construction of the insurance policy would not preclude an insured's recovery for the illness of a child that occurred during summer vacation. If an insurer chooses to use language in a policy which permits two rational interpretations, that more favorable to the insured is to be adopted.[9]

---

[9] Contrast *Save-Mor Supermarkets, Inc.* v. *Skelly Detective Serv. Inc.* 359 Mass. 221 (1971), in which the words "in attendance" were held to be unambiguous and thus the court interpreted the words by attempting to ascertain the "fair meaning of the language used," *id.* at 226, when the words were used in an insurance policy and the

*Rezendes* v. *Prudential Ins. Co. of America*, 285 Mass. 505, 511 (1934). *Joseph E. Bennett Co. Inc.* v. *Fireman's Fund Ins. Co.* 344 Mass. 99, 103-104 (1962). See *Standard Elec. Supply Co., Inc.* v. *Norfolk & Dedham Mut. Fire Ins. Co.* 1 Mass. App. Ct. 762, 765 (1974). In the instant case, the definition of the words "attending an accredited ... college" does not as matter of law exclude the fact pattern developed by the evidence. Thus no error was committed by the judge in permitting the case to go to the jury on the question whether Steven was attending an accredited school or college within the meaning of the insurance policy. *MacArthur* v. *Massachusetts Hosp. Serv. Inc.* 343 Mass. 670, 672 (1962), and cases cited. See *American Fid. & Cas. Co. Inc.* v. *London & Edinburgh Ins. Co.* 354 F. 2d 214, 216 (4th Cir. 1965). Compare *Whitney* v. *American Fid. Co.* 350 Mass. 542, 544 (1966).

2. The defendant also contends that the judge should have granted its motion for summary judgment or directed a verdict in its favor on the issue of whether Steven was totally dependent on his father for support within the terms of the insurance policy. It is well settled that, where an insurer drafts the documents, every doubt as to the intended meaning of the words must be resolved against the insurer and in favor of the insured. *Lustenberger* v. *Boston Cas. Co.* 300 Mass. 130, 134-135 (1938). *Transamerica Ins. Co.* v. *Norfolk & Dedham Mut. Fire Ins. Co.* 361 Mass. 144, 147 (1972).

The words "totally dependent" as they appear in the insurance policy are not free from ambiguity. Contrary to the suggestion in the defendant's brief that the words

---

question before the court was whether the language should be construed to cover a situation in which an armed guard was only in the vicinity of the armed truck but not actually at the scene when it was robbed. *Id.* at 225. In *Save-Mor* the court held that such a construction was in accord with the obvious purpose of the insurer to limit insurance protection when there was no armed guard on the scene who would act as a deterrent to the stealing of the truck. *Id.* at 226-227. In the instant case there is no such obvious purpose which the defendant could be said to have hoped to achieve by use of this terminology that would make construction of the word "attending" unambiguous in the factual context presented here.

mean that one must receive every penny of his support from the insured, it is at least as likely that the words were intended to mean that the insured's support of the beneficiary must be essential to the beneficiary's continued existence. When language in an insurance policy is ambiguous the words "must be construed in the sense that the insured was reasonably given to understand was intended to be their scope." *August A. Busch & Co. of Mass. Inc.* v. *Liberty Mut. Ins. Co.* 339 Mass. 239, 243 (1959).

On the issue of Steven's dependency on his father, there was evidence from which the jury could have found the following. Angelo paid for all of Steven's tuition and expenses while Steven was attending Colgate. Angelo paid Steven's registration fee for the University of Massachusetts. When Steven lived at home Angelo provided his room, board and medical expenses, and when Steven was hospitalized, Angelo paid for all his living expenses. Angelo also bought Steven a car. The evidence was more than sufficient to support the determination that the question of Steven's dependency on his father should be resolved by the jury. See *Joseph E. Bennett Co. Inc.* v. *Fireman's Fund Ins. Co.* 344 Mass. 99, 103-104 (1962); *Biathrow* v. *Continental Cas. Co.* 371 Mass. 249, 251 (1976). The jury were not required to believe that because of Steven's temporary employment during the brief period between March and July, 1973, Steven was no longer "totally dependent" on his father for support within the meaning of the policy.[10]

3. The defendant's contention that The Institute of Living, at which Steven was hospitalized, did not qualify

---

[10] The workmen's compensation cases cited by the defendant on this point are inapposite. The dependency provision in the workmen's compensation area is designed to provide additional compensation for an employee who has someone dependent upon his earnings for support. G. L. c. 152, § 1(3). The dependent, if a child over the age of eighteen, must be incapacitated from earning. G. L. c. 152, § 32(c). *Ferriter's Case,* 269 Mass. 267, 269-271 (1929). In this case the coverage is provided by a private insurer directly to those dependents who themselves become ill and need health care. Because the purpose of compensation in these two situations is so unrelated, there is no reason for giving a similar construction to the phrases.

as a hospital under the policy is without merit. The policy provides that the institution must be "not other than incidentally a place for alcoholics or drug addicts ...." A psychiatrist at The Institute of Living testified that all types of psychiatric illnesses are treated there. The mere fact that some of the patients at The Institute of Living are alcoholics or drug addicts is not conclusive of the issue. On the defendant's motion for a directed verdict, it was proper to leave to the jury any conflict in the evidence as to whether the Institute was a hospital within the policy definition. See *Kelly* v. *Railway Exp. Agency, Inc.* 315 Mass. 301, 302 (1943); *Turner* v. *Minasian,* 358 Mass. 425, 429 (1970).

4. In May, 1975, Angelo Panesis' employer, Coca Cola Bottling Company, cancelled the insurance policy in question, effective June, 1975. In order for the plaintiffs to recover under the extended benefits for two years beyond the date of the policy's cancellation, they must prove that Steven Panesis was "totally disabled" at the time the policy was terminated. For the purposes of determining whether a dependent is "totally disabled" within the meaning of the policy, the insured must prove that the dependent was "prevented solely because of sickness, from engaging in all of the normal activities of a person of like age and sex."

One of the questions on the claim form prepared by the defendant asked if the patient was "continuously totally disabled (unable to work)." A supervising psychiatrist at The Institute of Living completed this section of the form submitted by the defendant and answered the question in the affirmative. The psychiatrist also indicated that the patient "remains hospitalized" and would be unable to work for an undetermined period of time. This form was completed on April 28, 1975. At trial, on February 4, 1976, another psychiatrist testified that he had interviewed Steven the previous day and that, notwithstanding considerable improvement in Steven's mental condition since he had last been interviewed on October 28, 1975, Steven was then incapable of functioning outside a hospital en-

vironment. Although there was no direct evidence presented as to Steven's mental condition during June, 1975, the jury could reasonably infer what his mental state was at that time from Steven's continuous hospitalization during this period and from the psychiatric evidence presented. See *Hermanson* v. *Seppala*, 272 Mass. 197, 201 (1930); *Conroy* v. *Fall River Herald News Publishing Co.* 306 Mass. 488, 493 (1940); Leach & Liacos, Massachusetts Evidence 62 (4th ed. 1967). See generally *Shailer* v. *Bumstead*, 99 Mass. 112, 122-123 (1868); *Commonwealth* v. *Sheppard*, 313 Mass. 590, 606-607 (1943), cert. den. 320 U. S. 213 (1943); Wigmore, Evidence § 233(3) (3d ed. 1940). From this point, it would have been entirely logical for the jury to conclude that at the date of the policy's termination Steven's illness prevented him from engaging in substantially all of the activities expected of a person of like age and sex.

5. For the reasons discussed in the preceding sections, there was also no error in the judge's entering a declaratory judgment which declared that Steven was "a covered dependent" within the policy definition and that the "defendant is liable to pay for all of Steven Panesis' medical expenses to the extent that said expenses are covered expenses under the policy."[11] The judge's findings of fact and declaration as to the defendant's future liability are consistent with the jury's answers to the special questions. The findings are not clearly erroneous (Mass.R.Civ.P. 52[a], 365 Mass. 816 [1974]); they are in accord with our view of the evidence.

6. The defendant's contentions with respect to the trial judge's refusal to grant summary judgment on the plaintiffs' chapter 93A claim (which has not yet been tried) are premature, as the refusal to grant summary judgment is not a final judgment. G. L. c. 231, § 113, as appearing in

---

[11] The defendant's argument that the declaration is too broad is frivolous. The declaration does not seek to exceed the liability the defendant assumed under the policy in regard to (1) the duration of extended benefits, (2) its maximum liability or (3) the rights of the insured upon reinsurance by another company.

St. 1973, c. 1114, § 202. Accordingly, we will not at this time review the order denying summary judgment on the chapter 93A claim. This court can review an interlocutory order only when it has been properly reported to the Appeals Court by the trial judge. Mass.R.Civ.P. 64, 365 Mass. 831 (1974). G. L. c. 231, § 111, as appearing in St. 1973, c. 1114, § 199. *Rollins Environmental Serv. Inc.* v. *Superior Court*, 368 Mass. 174, 179-180 (1975). *Massachusetts Cas. Ins. Co.* v. *Landy*, 1 Mass. App. Ct. 35, 37 (1973).[12]

7. The judgments, entered in accordance with the jury's answers to the special questions and the judge's declaration of rights, are to be modified to conform with Mass. R.Civ.P. 54(b), 365 Mass. 821 (1974),[13] and as so modified, are affirmed.

*So ordered.*

---

[12] The defendant argues that Federal practice would permit an immediate review of the denial of a summary judgment motion where the case is already on appeal and where the questions the appellate court may resolve are fundamental to the further conduct of the case. It is apparent that the Federal courts' interpretations of the "finality" provision of 28 U.S.C. § 1257 (1970) have left the state of Federal practice in this area very uncertain. *Mercantile Natl. Bank* v. *Langdeau*, 371 U. S. 555, 575 (1963) (Harlan, J., dissenting). In view of the conflicting interpretations of the "finality" provisions of Title 28 of the United States Code (compare *Gillespie* v. *United States Steel Corp.* 379 U. S. 148, 152-154 [1964], and *Green* v. *Wolf Corp.* 406 F. 2d 291, 302 [2d Cir. 1968]; cert. den. 395 U. S. 977 [1969], with *Cobbledick* v. *United States,* 309 U. S. 323 [1940], and *United States* v. *Ryan,* 402 U. S. 530, 532-533 [1971]), the bench and bar of this Commonwealth should not be overzealous in looking to the Federal courts for guidance in this area. See *Foreign Auto Import, Inc.* v. *Renault Northeast, Inc.* 367 Mass. 464, 468 (1975). See generally, Bator et al., Hart & Wechsler's The Federal Courts and the Federal System 1553-1555 (2d ed. 1973).

[13] See fn. 3, *supra.*