Banks, J.
This is a report, in the form of a case stated, in a third-party action for a subcontractor’s indemnification under a comprehensive general liability policy of insurance.
On August 11, 1978, pláintiff Bond Bros., Inc. (“Bond”) executed a contract for the installation by defendant D&R Steel Erectors, Inc. (“D&R”) of reinforcing steel and welded wire mesh (rebar work) in the concrete construction of a power substation for the MBTA in Revere, Massachusetts. The subcontractor expressly required D&R’s coverage under a comprehensive general liability insurance contract.
D&R concluded its installation work on the north wall of the power station on October 18, 1978 and so notified Bond. On October 26, 1978, Bond completed the form of the north wall and poured concrete therein. Bond subsequently discovered that D&R had incorrectly placed, in deviation from subcontract specifications, the reinforcing steel in the north wall, and had also failed to install a portion of steel required by the subcontract. D&R’s performance resulted in a wall which “did not meet design criteria, was structurally unstable, and would require remedial measures.” Bond, as general contractor, was ordered by the MBTA to undertake all necessary remedial measures which ultimately consisted of the “construction of corbels as exterior reinforcing members.”
Summary judgment was entered herein for plaintiff Bond against defendant D&R in the sum of $33,239.00 for the full costs of all repair measures undertaken by Bond.
Third-party defendant American Insurance Company (“American”) denied D&R’s third-party claim for reimbursement for this judgment on the basis that such remedial costs did not constitute a loss indemnified under the comprehensive, general liability insurance policy (“GCL”) issued by American to D&R. The trial court entered judgment on August 21, 1980 for American on D&R’s third-party complaint.
1. There was no error in the trial court’s judgment for third-party defendant *281 American. The liability of defendant/third-party plaintiff D&R, upon Bond’s claim for D&R’s breach of contract, breach of warranty and negligence, was not a loss covered by the third parties’ insurance contract.
The policy in question obligated American to:
“pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of. . .
“property damage. . .
“to which this insurance applies, caused by an occurence. . .”
2. “Property damage” is defined in the CGL as:
“ (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom. ...”
Third-party plaintiff D&R asserts that its rebar work resulted in compensable “property damage” herein because such work caused “physical injury” to “tangible property” in the form of north wall of the MBTA station.
The federal case authority relied upon by D&R for its assertion is factually distinguishable from the instant action. Each of these cases involved the installation of a latently defective component part into a larger structural entity which resulted in damage to, or destruction of, such entity. See, e.g., Dakota Block Co. v. Western Casualty & Sur. Co., 132 N.W.2d 826 (S.D. 1965) (concrete blocks subject to discoloration and fading used in construction of school building); Pittsburgh Plate Glass Co. v. Fidelity & Gas Co. of N.Y., 281 F.2d 538 (3 Cir. 1960) (peeling, flaking paint baked into window jalousies); Bundy Tubing Co. v. Royal Indem. Co., 298 F.2d 151 (6 Cir. 1962) (defective tubing installed in radiant heating system); Hauenstein v. St. Paul-Mercury Indem. Co., 65 N.W.2d 122 (Minn. 1954) (plaster prone to cracking and shrinking used as a principal component in hospital walls and ceilings). Similarly, in United States Fidel. & Guar. v. Nevada Cement Co., 561 P.2d 1335 (Nev. 1977), a case characterized by D&R as “virtually identical” to the instant action, compensable property damage was held to have occurred when the structural integrity of a building was impaired by the use of concrete which had been defectively manufactured with an insufficient amount of chemical compound. The Supreme Court of Nevada stated:
the mere presence of a defective product in an entity can constitute property damage. . . .In the instant case, the presence of defective cement weakened the total structure, thereby requiring additional shoring to avoid the danger of collapse. We are not persuaded by appellant’s argument that structural damage may be recognized only if collapse or removal ensues, and not if replacement is averted by a shoring process. We therefore think the trial court properly determined that the defective cement caused injury under respondent’s insurance policy, even though financial loss was minimized by and limited to installation of shoring and related expenses.
Ibid., at 1337-1338.
In the case sub judice, the defect was not in the materials employed by the insured but in the insured’s workmanship or lack thereof. D&R did not utilize or install defective steel or other products in its rebar work, but simply failed to complete the same in conformity with the contract. The remedial measures undertaken by Bond were to correct D&R’s work or rather to complete it, reinforcing corbels were added to provide that degree of structural soundness to the wall which had been the responsibility of D&R as subcontractor. It has been stated that a “claim limited to remedying faulty workmanship or materials does not constitute ‘injury to or destruction of tangible property. ’ ’ ’ Vernon Williams & *282 Son v. Continental Ins. Co., 591 S.W.2d 760, 763 (Tenn. 1979). The rationale for this rule is derived from the purposes of CGL coverage and from the distribution of risks to be borne by the contractor and by the insurance company:
The insured-contractor can take pains to control the quality of the goods and services supplied. At the same time, he undertakes the risk that he may fail in this endeavor and thereby incur contractual liability whether express or implied. The consequences of not performing well is part of every business venture; the replacement or repair of faulty goods and works is a business expense, to be borne by the insure-contractor in order to satisfy customers. . . . The risks intended to be insured is the possiblity that the goods, products or work by the insured once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself. . . . The insured . . . may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligaton to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverage in question is designed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.
Weedo v. Stone-E-Brick, Inc., 405 A.2d 788, 791 (N.J. 1979). A counter-argument exists, however, that the language of insurance policies is to be construed according to the usual and ordinary meaning of the terms employed. Barnstable County Mut. Fire Ins. Co. v. Lally, 374 Mass. 602, 605 (1978). And as the third-party plaintiff contends, the CGL definition of property damage herein may be seen as drawn in terms of effect rather than cause. To the extent that D&R’s faulty workmanship may be deemed to have had the effect of a diminution of value or practical loss of use of the MBTA station north wall, “physical injury to. . .tangible property” could be found to have occurred.
We do not here rule as to whether the distinction between the provision of defective component materials and defective or unperformed services is the basis on which there is to be made a determination of whether or not property damage has occurred in this matter. For the purposes of this case, we will accept arguendo that sufficient ambiguity has been raised in the factual situation to warrant a finding that the third party plaintiff s claim should be considered under the CGL. It is a familiar tenet of insurance contract construction that all doubts must be resolved in favor of the insured. Panesis v. Loyal Protec. Life Ins. Co., 5 Mass. App. Ct. 66, 71-72 (1972).
3. Propery damage is compensable herein only if “caused by an occurrence.” An “occurrence” is defined in the CGL as:
an accident, including continuous or repeated exposure to conditions which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.
An “accident” customarily signifies “an unexpected happening or event which occurs without intention or design.” Sheehan v. Goriansky, 321 Mass. 200, 205 (1947); Dow v. United States Fidelity & Guar. Co., 297 Mass. 34, 38 (1937). In this Commonwealth, the scope of the term “accident” under a CGL policy is not to be narrowed so as to “limit or defeat any coverage fairly intended to be given. . . .” Vappi & Co. v. The Aetna Cas. & Sur. Co., 348 Mass. 427, 432 (1965). The term “accident” may be thus construed as encompassing the unintended *283 consequences of negligent acts, Massachusetts Turnpike Auth. v. Perini Corp., 349 Mass. 448, 457 (1965), as well as of a breach of warranty. Bundy Tubing Co. v. Royal Indem. Co., supra at 153. A policy which insures against the accidental is generally held “not limited to accidental means as distinguished from accidental results.” J.D.D' Amico, Inc. v. Boston, 345 218, 221-222 (1962); Lane v. Worcester Mut. Ins. Co., 13 Mass. App. Ct. 901, 923 (1982). Thus is has been stated that “unintended and unforeseen consequences of reckless or negligent acts, and even of intentional acts, at least if not undertaken with ‘ malice or intent to injure’ the person or property hurt . . . may be within the definition of ‘accident’ ” Vappi & Co., Inc. v. Aetna Cas. & Sur. Co., supra at 432.
Given the liberal construction to be accorded the term “accident,” it is evident that the faulty workmanship or negligence of D&R herein constituted an “occurence” within the purview of the CGL policy at issue. There is authority for the proposition that such a policy “does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident. ’ ’ Vernon A. Williams & Son v. The Continental Ins. Co., supra at 764; Weedo v. Stone-E-Brick, Inc., supra at 796. Nevertheless, any inherent ambiguity in the phrase “neither expected nor intended from the standpoint of the insured,” [see C. Raymond Davis & Sons, Inc. v. Liberty Mut. Inc., 467 F. Supp. 17, 20-21 (Pa. 1979) ], must be resolved in favor of D&R.
4. The comprehensive, general, liability insurance policy at issue herein, however, did not insure D&R against all property damage but only against damages “to which this insurance applies.” This qualifying phrase necessitates an examination of those limitations on coverage contained in the exclusion clauses of the policy. Weedo v. Stone-E-Brick, supra at 790. “In Massachusetts, exclusions from coverage in an insurance policy are to be strictly construed.” King v. Prudential Ins. Co. of America, 359 Mass. 46, 53 (1971).
The essence of D&R’s third-party claim against American is that damage was caused to the north wall of the MBTA station by the faulty rebar work of D&R which necessitated a redesign of, and the application of remedial measures to, said wall. Section IV of the parties’ CGL policy states, in relevant part,
A. The Exclusions relating to property damage. . . are replaced by the following exclusions (y) and (z):
(y) to property damage
[[Image here]]
(2) except with respect to liability under a written sidetrack agreement or the use of elevators to
[[Image here]]
(d) that particular part of any property, not on premises owned by or rented to the insured,
[[Image here]]
(iii) the restoration, repair or replacement of which has been made necessary by reason of faulty workmanship thereon by or on behalf of the insured.
No ambiguity appears to attend the terminology of this exclusion. Clause IV A (y)(2)(d)(iii) must, therefore, be construed in the light of the ordinary and usual meaning of the language employed. Barnstable County Mut. Fire Ins. Co. v. Lally, supra at 605.
The property damage alleged by D&R was, as noted, to the north wall of the MBTA station in Revere, and thus was to property “not on premises owned by or rented to the insured,” D&R. The redesign of this wall, and the structural corrective work performed, which consisted of the addition of corbels as a *284 shoring device, clearly constituted the “restoration” or “repair” of property. Finally D&R’s failure to meet design criteria and to install all reinforcing steel required by the subcontract may be obviously characterized as “faulty workmanship” by the insured.
We hold, therefore, that the third-party’s claim against American is for a loss clearly excluded from insurance coverage by the express terminology of the parties’ CGL policy.
There is no merit to D&R’s contention that one of the exclusions itself grants coverage. Exclusion (a) provides:
(This insurance does not apply) to liability assumed by the assured under any contract or agreement except an incidental contract; but this exclusion does not apply to ... a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner.
“Exclusion clauses do not grant coverage; exclusions limit the scope of coverage granted in the insuring agreement.” Stillwater Condominiums v. American Home Assur., 508 F. Supp. 1075, 1079 (Mon. 1981). See also Woogmaster v. Liverpool & London & Glove Ins. Co., 312 Mass. 479, 481-482 (1942). Moreover, it is unnecessary to consider whether exclusion (a) is inconsistent with, or in some manner ambiguous when read in conjunction with, exclusion (y)(2)(d)(iii) since
Each exclusion is meant to be read with the insuring agreement, independently of every other exclusion. The exclusions should be read seriatim, not cumulatively. If any one exclusion applies there should be no coverage, regardless of inferences that might be argued on the basis of exceptions. There is no instance in which an exclusion can properly be regarded as inconsistent with another exclusion, since they bear no relationship with one another (citation deleted).
Weedo v. Stone-E-Brick, Inc., supra at 795; Stillwater Condominiums v. American Home Assur., supra at 1079.
4. The loss claimed by the third-party defendant D&R herein was expressly and unambiguously excluded from the coverage of the comprehensive, general liability insurance policy issued by the third-party defendant, American. The trial court’s judgment in favor of the third-party defendant is hereby affirmed.
Report dismissed.