Neel, Stephen E., J.
This is an action for declaratory judgment brought by the plaintiff, Western World Insurance Company (“Western World”), against the defendant, Charles J. Azoff d/b/a CJA Custom Renovation and Remodeling (“Azoff’ or “CJA”). Western World seeks a declaration that it is not obligated to defend or indemnify Azoff, Western World’s insured, for a claim brought in a separate complaint (“Newcomb Complaint”) against Azoff by Steven W. Newcomb (“Newcomb”).[2] The claims against Azoff in the New-comb Complaint arise out of allegedly faulty engineering and surveying work performed or supervised by CJA in connection with the construction of a home for Newcomb.[3] Western World brought this Motion for Summary Judgment, alleging that the “Engineers, Architects or Surveyors Professional Liability” exclusion found in Azoffs Commercial General Liability Policies with Western World bars coverage for the claims against Azoff in the Newcomb Complaint. Azoff did not directly oppose Western World’s motion, but instead filed a separate Motion for Summary Judgment. For the following reasons, Azoffs Motion for Summary Judgment will be denied, and Western World’s Motion for Summary Judgment will be allowed.
BACKGROUND
The undisputed facts and reasonable inferences drawn therefrom, viewed in the light most favorable to Azoff, are as follows.
I. The Western World Policies
Western World issued two Commercial General Liability Policies to CJA for the time periods relevant to this action: (1) No. NPP 889354 (covering April 1, 2004 to April 1, 2005); and (2) No. NPP 925450 (covering April 1, 2005 to April 1, 2006).[4] Western World’s primary insurance obligation in both policies provides:
[Western World] will pay those sums that the insured becomes legally obligated to pay as damages because of “bodily injury” or “property damage” to which this insurance applies. [Western World] will have the right and duty to defend the insured against any “suit” seeking those damages. However, we will have no duty to defend the insured against any “suit” seeking damages for “bodily injury” or “property damage” to which this insurance does not apply.
This insurance applies to “bodily injury” and “property damage” only if:
(1) The “bodily injury” or “property damage” is caused by an “occurrence” that takes place in the “coverage territory”; and
(2) The “bodily injury” or “property damage” occurs during the policy period.
Under the policies, “property damage” is defined as either: (1) “(p]hysical injury to tangible property, including all resulting loss of use of that property . . or (2) “[l]oss of use of tangible property that is not physically injured ...”
In addition, both policies include an “Engineers, Architects or Surveyors Professional Liability” exclusion (“Exclusion”). Specifically, the insurance policies do not apply to “ ‘bodily injury,’ ‘property damage,’ or *451 ‘personal and advertising injury’ arising out of the rendering of or failure to render any professional services by [Azoff] or any engineer, architect or surveyor who is either employed by [Azoff] or performing work on [Azoffs] behalf in such capacity.” “Professional services” include: (1) “preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications”; and (2) “[s]upervisory, inspection, architectural or engineering activities.”
II. The Newcomb Complaint
On September 22, 2004, Newcomb and Azoff entered into a construction agreement whereby CJA agreed to build a two-stoiy, four-bedroom Colonial home for $250,000 at 579 Washington Street in East Bridgewater, Massachusetts (the “Property”). According to Newcomb, the construction project was to begin on September 27, 2004, and be completed by December 31,2004. The terms of the agreement between CJA and Newcomb included a provision that CJA ensure that “[a]ll construction ... be to MA building code specifications.”[5]
CJA subsequently contracted with Silva Engineering on October 8, 2004. The agreement required Silva Engineering to, among other tasks, “[s]takeout location of proposed house, driveway and septic system prior to the start of construction”; “[cjonduct as built survey of foundation and prepare as built plan for the Building Department” and “[c]onduct as built survey of septic system and prepare as built plan fro [sic] the Board of Health.” The estimated cost of the engineering services was between $3,000 and $3,500. According to Newcomb, construction of the house on the Property began on December 8, 2004.
Once the house was complete, Newcomb sought an occupancy permit from the East Bridgewater Building Inspector. The Building Inspector refused to issue the occupancy permit because the house violated the Town of East Bridgewater’s zoning ordinances. Specifically, the house violated the ordinance mandating a minimum 25-foot sideline setback. A September 2005 plan by Silva Engineering indicated a sideline measurement of slightly more than 15 feet. In the New-comb Complaint, Newcomb alleges that CJA and Silva Engineering continued construction on the property without alerting Newcomb about the zoning violation.
In February 2006, Newcomb retained Perkins Engineering, Inc. [“Perkins Engineering”) to perform an instrument survey of the Properly in order to obtain a second opinion on the sideline measurement. According to the Perkins Engineering survey, the sideline measurement exceeded 26 feet. Despite the Perkins Engineering survey results demonstrating that the house complied with the zoning ordinance, the Town Building Inspector continued to refuse to issue New-comb an occupancy permit. There is a dispute as to who performed the original staking out of the house, driveway, and septic system.
As a result of Newcomb’s inability to obtain an occupancy permit, Newcomb filed his Complaint against CJA and Silva Engineering on October 27, 2006. The Newcomb Complaint asserted causes of action against CJA for breach of contract, negligence, negligent misrepresentation, and violations of G.L.c. 142A and c. 93A. Newcomb specifically asserted, inter alia, that CJA:
(1) failed to investigate the Town of East Bridgewater’s zoning ordinances;
(2) failed to erect a dwelling in conformity with the minimum sideline zoning requirements;
(3) failed adequately to “stakeout” construction of the Property, resulting in creating a septic system which encroached on contiguous land not owned by Newcomb;
(4) failed to notify Newcomb concerning the purported zoning violations before completing construction on the Property;
(5) carelessly and negligently erected a dwelling too close to property boundaries in violation of the 25-foot minimum sidelines requirements of the Town of East Bridgewater’s zoning ordinances; and
(6) incompetently and negligently performed or supervised the performance of the staking of the house, driveway, and septic system on the Property.
Newcomb’s inability to secure an occupancy permit made it more difficult to sell the house. On one occasion, the Property was under agreement for $515,000, but the agreement foundered on the lack of an occupancy permit.
On November 16, 2006, Western World informed CJA by letter that Western World was not obligated to defend or indemnify CJA for the claims brought in the Newcomb Complaint, in part because of the Exclusion. This declaratory judgment action followed.
DISCUSSION
I. Summary Judgment
The court may grant summary judgment where there are no genuine issues as to any material fact and where the moving party is entitled to summary judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue, and that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Summary judgment is appropriate here because none of the facts material to this decision are disputed by the parties.
II. Western World’s Duty to Defend or Indemnify
Western World’s primary argument is that the Exclusion precludes coverage here for the alleged “property damage” asserted by Newcomb, because Azoff is being sued in the Newcomb Complaint for what *452 amounts to a failure properly to render “professional services.” Azoff counters in his own motion for summary judgment that, inter alia, he is not being sued in connection with the rendering of any “professional services” as defined in the insurance policy.[6]
When the policyholder meets the initial burden of “proving coverage within the policy description of covered risks,” the insurer must then “prove the applicability of any exclusion to coverage set forth outside of the insuring clause.” Camp Dresser & McKee, Inc. v. Home Ins. Co., 30 Mass.App.Ct. 318, 321 (1991). “It is settled in this jurisdiction . . . that the question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions . . .” Camp Dresser & McKee, Inc., 30 Mass.App.Ct. at 321-22, quoting Sterilite Corp. v. Continental Cas. Co., 17 Mass.App.Ct. 316, 318 (1983). The underlying complaint “need show only a possibility of coverage” to establish a duty to defend. Camp Dresser & McKee, Inc., 30 Mass.App.Ct. at 322, citing Sterilite Corp., 17 Mass.App.Ct. at 319.
“In determining whether an omission or activity falls within the scope of a professional services exclusion, courts generally look to the nature of the conduct under scrutiny rather than to the title or the position of those involved.” Camp Dresser & McKee, Inc. v. Home Ins. Co., 30 Mass.App.Ct. 318, 323 (1991). “The general focus of definitions of‘professional services’ is on whether an occupation requires specialized knowledge and calls for mental rather than physical skills.” Id.
In Camp Dresser & McKee, the Court interpreted the scope of an “Engineers, Architects or Surveyors Professional Liability” exclusion[7] in a dispute over whether the insurance company owed the insured engineering firm responsible for the management of a water treatment facility a duty to defend in a lawsuit brought by an employee of the plant for an injury suffered on the job. Camp Dresser & McKee, 30 Mass.App.Ct. at 319. The employee sued the insured engineering firm for negligence for failing adequately to ensure the safety of the machinery that injured the employee. Id. at 320. The Court concluded that the exclusion did not preclude the insurance company’s duty to defend against the employee’s complaint because “professional services” did not include the type of “management tasks” that alert employees to safety risks. Id. at 325.
The resolution of the instant dispute regarding interpretations of the language of the Exclusion is a question of law. Save-Mor Supermarkets, Inc. v. Skelly Detective Serv., Inc., 359 Mass. 221, 226 (1971). “In this interpretation, [the court is] guided by three fundamental principles: (1) an insurance contract, like other contracts is to be construed according to the fair and reasonable meaning of its words; (2) exclusionary clauses must be strictly construed against the insurer so as not to defeat any intended coverage or diminish the protection purchased by the insured; and (3) doubts created by any ambiguous words or provisions are to be resolved against the insurer.” (citations omitted). Camp Dresser & McKee, Inc. v. Home Ins. Co., 30 Mass.App.Ct. 318, 323-24 (1991).
Here, it cannot be disputed that Newcomb’s Complaint arises out of Azoffs failure properly to site the house on the Property. Proper siting requires proper staking, which requires proper surveying. “Preparing, approving, or failing to prepare or approve, maps . . . surveys ... or drawings and specifications” is a “professional service” as defined in Azoffs insurance policy with Western World.[8] Under the Exclusion, therefore, the Newcomb Complaint does not constitute a covered claim because it arises out of “the rendering of or failure to render any professional services by [Azoff] or any engineer, architect or surveyor who is either employed by [Azoff] or performing work on [Azoffs] behalf in such capacity.”
The identity of the entity (Azoff, Hanover, or Silva) that actually staked the property is irrelevant; the indisputable fact remains that Azoff, as the general contractor and policy holder, failed to supervise or otherwise ensure that the professional service of preparing an accurate survey of the Property was properly done.[9] The Exclusion therefore excuses Western World from either defending or indemnifying Azoff in connection with the Newcomb Complaint.
ORDER
For the foregoing reasons, Azoffs Motion for Summary Judgment is DENIED, and Western World’s Motion for Summary Judgment is ALLOWED. Western World’s request for costs pursuant to G.L.c. 231A, §§5 and 7, is denied.

Newcomb v. Silva Engineering Associates, P.C. and Charles J. Azoff d/b/a CJA Custom Renovation and Remodeling, Civil Action No. 06-1273B (Plymouth County Sup. Ct.).

The Newcomb Complaint contains five counts against Azoff: Count I (breach of contract); Count II (negligence); Count III (negligent misrepresentation); Count IV (violation of G.L.c. 142A, §17); and Count v. (violation of G.L.c. 93A, §§2, 11).

No. NPP 925450 was extended to April 15, 2006, by Endorsement 04.

The Massachusetts State Building Code can be found at 780 Code Mass. Regs. 51.00 et seq. (7th ed.). The Code provides that “no permit for the construction ... of any detached one-or two-family dwelling shall be issued if such detached one-or two-family dwelling or use would be in violation of any zoning ordinance or bylaw.” 780 Code Mass. Regs. §5111.2 (7th ed.). A certificate of occupancy will not be issued until “all the work has been completed in accordance with the provisions of the approved permits and of the applicable codes for which a permit is required ...” 780 Code Mass. Regs. §5120.1 (7th ed.).

The facts as stated in Western World’s Statement of Undisputed Material Facts are taken as admitted by Azoff because he did not file his own timely response. See Superior Court Rule 9A(b)(5). In addition, Azoffs Motion for Summaiy *453 Judgment did not include his own numbered Statement of Undisputed Material Facts and Legal Elements as required by Superior Court Rule 9A(b)(5). Defendant’s “Reply to Plaintiffs Opposition to Defendant’s Cross-Motion for Summary Judgment” sets out a late-filed response to Plaintiffs Statement of Undisputed Material Facts and Legal Elements. Even taking that response into consideration, the Court’s conclusion regarding the parties’ motions is unchanged.

The “Engineers, Architects or Surveyors Professional Liability” exclusion in CDM’s policy with Home provided: “It is agreed that the insurance does not apply to bodily injury or property damage arising out of the rendering of or failure to render any professional services by or for [CDM], including (1) the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications and (2) supervisory, inspection or engineering services.”

‘Professional services” include: (1) “preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications”: and (2) “['s]upervisory, inspection, architectural or engineering activities.”

Nor does the Perkins Engineering survey, obtained by Newcomb and showing compliance with the zoning bylaw, change the conclusion that Western World has no duty under the policy in the circumstances here. If the house was in fact correctly sited, Newcomb’s claim fails and neither Azoff nor Western World have any liability. Conversely, there is no duiy to defend if, as is the case here, Newcomb’s claim is based on circumstances that, as the Court concludes, fall within the Exclusion.