## ELLA BOAZOVA *VS.* SAFETY INSURANCE COMPANY.

No. 09-P-189.

Middlesex. October 2, 2009. - December 16, 2010.

Present: RAPOZA, C.J., DUFFLY, BERRY, GRAINGER, & WOLOHOJIAN, JJ.[1]

Further appellate review granted, 459 Mass. 1103 (2011).

*Insurance,* Homeowner's insurance, Coverage, Construction of policy, Water damage.

In a civil action brought in Superior Court, in which the plaintiff alleged breach of contract and violation of G. L. c. 93A arising from an insurer's denial of the plaintiff's claim for damage caused to her house by water seepage, the judge did not err in concluding, as a matter of law, that the damage to the plaintiff's house was not covered by the homeowner's insurance policy, where, although the policy covered losses caused by undetected water seepage, it was clear that the homeowner's loss originated from surface water (i.e., snow and rain) and was therefore excluded from coverage under the policy, regardless of the means by which the surface water entered the plaintiff's house. [440-444] BERRY, J., dissenting, with whom GRAINGER, J., joined.

CIVIL ACTION commenced in the Superior Court Department on July 17, 2007.

The case was heard by *Dennis J. Curran,* J., on motions for summary judgment.

*Daniel F. McCarthy* for the plaintiff.

*Richard M. Moynihan* for the defendant.

WOLOHOJIAN, J. Ella Boazova appeals from the judgment entered against her on the parties' cross motions for summary judgment. At issue is whether the motion judge erred when he concluded, as a matter of law, that the damage to Boazova's

[1]The case was initially heard by a panel comprised of Justices Berry, Grainger, and Wolohojian, and the case was subsequently submitted on briefs to Chief Justice Rapoza and Justice Duffly in accordance with Mass.R.A.P. 24(a), 365 Mass. 872 (1974). As to this procedure, see generally *Sciaba Constr. Corp.* v. *Boston,* 35 Mass. App. Ct. 181, 181 n.2 (1993); *Commonwealth* v. *Rousseau,* 61 Mass. App. Ct. 144, 144 n.1 (2004).

house was not covered by her homeowner's insurance policy. We affirm.

The pertinent facts are undisputed. In June, 2001, Boazova bought a house in Arlington for which she purchased homeowner's insurance from the defendant, Safety Insurance Company (Safety). The policy remained in force, modified from time to time, at all times thereafter. In August, 2005, while renovating her kitchen, Boazova discovered that moisture had gotten into the wood sill on top of the foundation at the back of the house, and that the moisture had caused the sill and adjoining floor joists and wall studs to rot.

According to Boazova's own expert, "[t]he cause of the rotted sill plate, wall studs, and floor joists is the concrete patio that was poured directly against the house. This permitted moisture to migrate to the top of the foundation, rotting the clapboard siding, the 1x exterior, and eventually the sill plate, floor joists, and wall studs." He further opined that "[t]he current situation is the result of rot and deterioration over an extended period of time," and that the rot and deterioration were hidden.[2] He concluded that "[w]ere it not for the water, the structure would still be intact."

Safety's expert's views are consistent, and Boazova does not contest them. Safety's expert, too, points to the concrete patio, which was installed at a higher grade than the foundation, about one foot above the wood sill, and "tipped towards the rear wall of the house." In Safety's expert's opinion, "rotting of the wooden sill and other wooden framing elements of the rear wall of the Insured Property was the result of a moist or wet condition caused by surface water in the form of rain or snow falling onto the concrete patio at the rear of the house, running along the surface of the concrete patio to the rear wall of the house, and then running down into gaps and joints in the patio onto the wood framing of the rear wall which was below the grade of the concrete patio."

The concrete patio was built before Boazova purchased the house, as was a concrete cant installed along the edge of the patio, which was designed to direct water away from the house.

---

[2]Although this portion of her expert's opinion might suggest otherwise, Boazova expressly disavows on appeal that rot is a cause of her loss: " 'Rot,' wet or otherwise, was the result not the cause."

There is no suggestion that Boazova knew about the damage to the sill, joists, or studs before its discovery in 2005. She submitted a claim to Safety promptly thereafter, and filed this suit alleging breach of contract and violation of G. L. c. 93A after Safety denied her claim.

1. *Discussion.* The interpretation of an insurance policy is a question of law for the trial judge, subject to our de novo review. See *Norfolk & Dedham Mut. Fire Ins. Co.* v. *Quane*, 442 Mass. 704, 707 (2004); *Commerce Ins. Co.* v. *Theodore*, 65 Mass. App. Ct. 471, 472-473 (2006). The policy's terms are to be interpreted according to the "fair meaning of the language used, as applied to the subject matter." *Davis* v. *Allstate Ins. Co.*, 434 Mass. 174, 179 (2001), quoting from *Bilodeau* v. *Lumbermens Mut. Cas. Co.*, 392 Mass. 537, 541 (1984). We construe the language in an insurance policy according to its plain meaning if it is unambiguous. See *Money Store/Mass., Inc.* v. *Hingham Mut. Fire Ins. Co.*, 430 Mass. 298, 300 (1999). "This is consistent with our long-standing policy that the rules governing the interpretation of insurance contracts are the same as those governing the interpretation of any other contract." *Ibid.*, quoting from *Cardin* v. *Royal Ins. Co.*, 394 Mass. 450, 453 (1985). The insured bears the burden of establishing coverage. *Tumblin* v. *American Ins. Co.*, 344 Mass. 318, 320 (1962).

The interpretation of an exclusion in an insurance contract also presents a question of law, see *Fuller* v. *First Fin. Ins. Co.*, 448 Mass. 1, 5 (2006), but here the burden shifts to the insurer to establish the exclusion's applicability, see *Hanover Ins. Co.* v. *Talhouni*, 413 Mass. 781, 785 (1992). "Although an exclusionary clause is construed narrowly, . . . '[w]e are not free to revise it or change the order of the words.' " *Finn* v. *National Union Fire Ins. Co. of Pittsburgh, Pa.*, 452 Mass. 690, 695 (2008), quoting from *Continental Cas. Co.* v. *Gilbane Bldg. Co.*, 391 Mass. 143, 147 (1984). "A policy of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced in accordance with its terms." *Hyfer* v. *Metropolitan Life Ins. Co.*, 318 Mass. 175, 179 (1945), quoting from *Stankus* v. *New York Life Ins. Co.*, 312 Mass. 366, 369 (1942).

With these principles in mind, we turn to the policy at issue in this case. Boazova contends that she is entitled to coverage

because her loss was caused by undiscovered water seepage, which is covered by section I(A)(2)(e)(9) of the policy.[3] That section of the policy (which for the sake of convenience we refer to as the "hidden seepage provision") provides:

"SECTION I — PERILS INSURED AGAINST

"COVERAGE A — DWELLING and COVERAGE B — OTHER STRUCTURES

"We insure against risk of direct loss to property described in coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

". . .

"2. Caused by:

". . .

> "(9) Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all 'insureds' and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure."

Were we to look only at this single provision, disregarding the remainder of the policy, we would agree with Boazova that the policy covers losses caused by undetected water seepage. But such is not our task. *J. A. Sullivan Corp.* v. *Commonwealth*, 397 Mass. 789, 795 (1986) ("A contract is to be construed to give reasonable effect to each of its provisions"). The policy clearly states that the hidden seepage provision does not stand in isolation, but provides coverage only to the extent not otherwise excluded or excepted.[4] Specifically, the paragraph immediately following the hidden seepage provision states:

---

[3]Section I(A)(2)(e)(9) was added to the policy through an endorsement entitled "Limited Fungi, Wet or Dry Rot, or Bacteria Coverage."

[4]The dissent rests on the faulty premise that an exclusion limiting coverage creates a conflict or ambiguity that must be construed against the insurer. By definition, all exclusions limit coverage. To conclude, as the dissent does,

"3. Excluded under Section I — Exclusions.

> "Under items 1. and 2. [which includes the hidden seepage provision], any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered."

We turn, therefore, to the Exclusions section of the policy. It provides in relevant part:

## "SECTION I — EXCLUSIONS

"1. We do not insure for loss caused directly or indirectly by any of the following. *Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.*

". . .

"c. Water Damage, meaning:

> "(1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind."[5]

(Emphasis added.) The Supreme Judicial Court has construed the precise language emphasized above and has held that it "plainly" forecloses an insured "from invoking the train of events rule." *Jussim* v. *Massachusetts Bay Ins. Co.*, 415 Mass. 24, 31 (1993). Put another way, if an excluded event occurs anywhere in the chain of causation, then the insured is not entitled to coverage. Thus, if surface water occurred anywhere in the chain of events leading to Boazova's loss, she is not

---

from that fact alone the exclusion must be disregarded would mean that no exclusion could ever be given force. Such a result is not permitted by our law. See *Finn* v. *National Union Fire Ins. Co. of Pittsburgh, Pa.*, 452 Mass. at 695. To be sure, there are instances where exclusions can be ambiguous. But an exclusion is neither ambiguous nor illusory simply because it limits coverage. *McGregor* v. *Allamerica Ins. Co.*, 449 Mass. 400, 404-405 (2007).

[5]Also excluded is loss caused by "[w]ater below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure." Safety does not rely on this provision as the basis for denying coverage, and there is no evidence in the record that the water here was beneath the surface of the ground.

entitled to coverage under the policy. Loss caused, in whole or part, by surface water is excluded "regardless of any other cause or event contributing concurrently or in any sequence to the loss."

Boazova does not dispute Safety's expert's opinion that the water that ultimately seeped into the structure of her house came from snow and rain that landed on the patio and then migrated to the sill.[6] See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 711 (1991), quoting from *Godbout* v. *Cousens*, 396 Mass. 254, 261 (1985) (the party opposing summary judgment has a burden "to show with admissible evidence the existence of a dispute as to material facts"). Our law defines surface water as "waters from rain, melting snow, springs, or seepage, or floods that lie or flow on the surface of the earth and naturally spread over the ground but do not form a part of a natural watercourse or lake." *DeSanctis* v. *Lynn Water & Sewer Commn.*, 423 Mass. 112, 115 n.6 (1996). Applying this definition to the undisputed facts, it is clear that Boazova's loss originated from surface water.[7] Like the motion judge, therefore, we conclude that Boazova is not entitled to coverage under the policy.

Ignoring the critical language of the exclusion, and the Supreme Judicial Court's construction of it, Boazova argues that seepage, not surface water, is the "active efficient" cause of her loss. As we have noted above, she is foreclosed "from invoking the train of events rule." *Jussim* v. *Massachusetts Bay Ins. Co.*, 415 Mass. at 30-31. Even were we inclined (which we are not) to disregard

---

[6]Indeed, Boazova presented no evidence at all, let alone any conflicting evidence, as to the source of the water that seeped into the sill.

[7]Contrary to the dissent's assertion, the term "surface water" is not defined in the policy. Instead, the term is part of the definition of "water damage." Specifically, exclusion 1(c)(1) provides that water damage means "[f]lood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind." Ordinary principles of contract interpretation require that each item in this list be given its own ordinary and separate meaning. "Every word in an insurance contract 'must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable.' " *Boston Gas Co.* v. *Century Indem. Co.*, 454 Mass. 337, 355 (2009), quoting from *Allmerica Fin. Corp.* v. *Certain Underwriters at Lloyd's, London*, 449 Mass. 621, 628 (2007). We cannot, as the dissent proposes, conflate the meaning of "surface water" with that of "overflow of a body of water" so that the two mean the same thing and render one or the other superfluous.

(as she does) the holding of *Jussim*, Boazova's argument would nonetheless fail because it is based on the mistaken premise that the "active efficient" cause is the one nearest in time or place to the loss. We have repeatedly rejected this notion:

> "When it is said that the cause to be sought is the direct and proximate cause, it is not meant that the cause or agency which is nearest in time or place to the result is necessarily to be chosen. . . . The active efficient cause *that sets in motion a train of events which brings about a* result without the intervention of any force started and working actively from a new and independent source is the direct and proximate cause . . . ."

*Solimine* v. *Massachusetts Property Ins. Underwriting Assn.*, 65 Mass. App. 782, 785-786 (2006), quoting from *Jussim* v. *Massachusetts Bay Ins. Co.*, *supra* at 27 (water was the cause of loss, regardless of how it entered the insured's house). Here, it is undisputed that snow and rain set in motion the train of events. The means by which the water entered the plaintiff's house, whether seeping, leaking, or some other form of aquatic migration, is not a separate cause of loss, nor does it transform the water into something other than surface water.[8]

Deciding as we do, we need not reach Boazova's argument that the motion judge erred in ruling that she had failed to establish that the loss occurred during the policy period. Nor need we reach Safety's argument that the loss falls under the "Wet and Dry Rot" exclusion.

For the reasons set forth above, the judgment is affirmed.

*So ordered.*

BERRY, J. (dissenting, with whom Grainger, J., joins). I dissent from the majority's reading of the insurance policy, which

---

[8]See, e.g., *T.H.E. Ins. Co.* v. *Charles Boyer Childrens Trust*, 269 Fed. Appx. 200 (3d Cir. 2008) (rain that caused sewer pipe to rupture, then flowed down embankment and pooled below before bursting into insured's premises was "surface water" and excluded from coverage); White *vs.* West American Ins. Co., U.S. Dist. Ct., No. 4:06-CV-2453 (M.D. Pa. Dec. 8, 2008) (rain that caused lake level to rise, necessitating opening of floodgates, which in turn caused river to swell, flooding of dike area, and then subsequently flooded insured home was "surface water" excluded from coverage).

disregards an endorsement amending the policy that provides for the precise coverage here at issue. Alternatively, and at best, the majority opinion is inconsistent with Massachusetts law, which construes conflicting terms in a policy against the insurer. In addition, the majority result relies on the statement that "[t]he pertinent facts are undisputed." To the contrary, there is a genuine and material disputed factual issue concerning the manner and means by which water caused damage to the plaintiff's house, a question central to the existence of coverage.

1. *The policy and "additional coverage" endorsement.* I turn first to the policy provisions and principles of Massachusetts law applied in construing conflicting provisions against an insurer. The insurer issued an endorsement covering the damage at issue: it provided "additional coverage" for " 'Fungi', Wet or Dry Rot, or Bacteria."[1] This is precisely a type of damage resulting from seepage of water over a period of time.

Notwithstanding that, Safety asserts that this endorsement was limited by a "Perils Insured Against" reservation.[2] The

---

[1]The full endorsement to the policy, as in effect during the filing of the subject claim, added paragraph 12 to the "Section 1 — Property Coverages" of the policy, to provide additional coverage for wet or dry rot as follows:

"The following Additional Coverage is added:

"12. 'Fungi', *Wet or Dry Rot*, or Bacteria

"a. The amount shown in the Schedule above [with $10,000 or $50,000 limits of liability] is the most we will pay for:

"(1) The total of all loss payable under Section 1 — Property Coverages caused by 'fungi', *wet or dry rot*, or bacteria;

"(2) The cost to remove 'fungi', *wet or dry rot*, or bacteria from property covered under Section 1 — Property Coverages;

"(3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the 'fungi', *wet or dry rot*, or bacteria; and

"(4) The cost of testing of air or property to confirm the absence, presence or level of 'fungi', *wet or dry rot*, or bacteria . . . ."

(Emphasis added.)

[2]Specifically, subparagraph b to section 12 of Additional Coverages in the endorsement states as follows:

"The coverage described in 12.a. only applies when such loss or costs

reservation — according to Safety — was designed to exclude damage caused by water seepage unless the seepage was hidden. Additionally, Safety cites another conflicting provision to negate the ostensibly provided "additional coverage." This is the exclusion for surface water[3] — an exclusion on which the majority relies. In order to create an exclusion, the insurer must use language that is clear to the policy holder. Here, the surface water exclusion, notwithstanding the catchphrase "directly or indirectly," simply cannot reasonably be interpreted to negate coverage for rot caused by (hidden) seepage. Interlacing these confusingly drafted paragraphs, Safety's reading, and the majority construction, would negate the very existence of the additional coverage. This is incomprehensible doublespeak. Such a reading is contrary to the principle that "[l]anguage in an insurance policy must be given its ordinary meaning, however, and construed in the sense that the insured will reasonably understand to be the scope of his coverage." *Slater* v. *United States Fid. & Guar. Co.*, 379 Mass. 801, 803 (1980).

While it may be theoretically possible to find damage caused by hidden seepage that does not proximately involve surface water, the majority approach effectively allows the insurer to look to any phase of the water cycle and thereby deny coverage. This proves too much by far. In the instant case the plaintiff alleged, and provided expert evidence, that water fell to the surface as rain, then seeped into the plaintiff's dwelling, causing damage. It borders on sharp practice for Safety to deny coverage for seepage by claiming that this constitutes damage indirectly caused by surface water. "Surface water," defined by the policy in the context of "water damage," refers to "tidal water" and "overflow of a body of water" (see note 4, *infra*) and is properly read as meaning a body of water that migrates beyond its usual

---

are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time Peril Insured Against occurred."

[3] "We do not insure for loss caused directly or indirectly by any of the following[:] . . . Water Damage, meaning . . . [f]lood, *surface water*, waves, tidal water, overflow of a body of water . . . ." (emphasis added).

bounds.[4] "An interpretation which gives a reasonable meaning to all of the provisions of a contract is to be preferred to one which leaves a part useless or inexplicable." *Sherman* v. *Employers' Liab. Assur. Corp. Ltd.*, 343 Mass. 354, 357 (1961).

A proper reading of the policy requires recognition that damage caused by water which has become seepage, whatever the source to which it might be originally traced, is covered by the contract between the parties. When a consumer pays for insurance under a policy, which by its language covers damage caused by seepage of water, that is what the insured consumer should receive.[5]

Even were we to assume that these policy provisions cannot be reconciled, it would not avail Safety. "If there are two rational interpretations of policy language, the insured is entitled to the benefit of the one that is more favorable to it." *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, 407 Mass. 689, 700 (1990). An insurer may not deploy ambiguous language and conflicting cross provisions in a policy to deny coverage. In cases of ambiguity, "Massachusetts construes insurance policies against the insurer." *City Fuel Corp.* v. *National Fire Ins. Co. of Hartford*, 446 Mass. 638, 643 n.5 (2006). Here, the "additional coverage" added by paragraph 12.a appears to do just that — provide additional coverage. An insurance policy is to "be construed to give reasonable effect to each of its provisions." *J. A. Sullivan Corp.* v. *Commonwealth*, 397 Mass. 789, 795 (1986). "It is also appropriate, in construing an insurance policy,

---

[4]In granting summary judgment, the judge erroneously relied on a definition of surface water as water "from rain, melting snow, springs, or seepage, or floods that lie or flow on the surface of the earth and naturally spread over the ground but do not form a part of a natural watercourse or lake." *DeSanctis* v. *Lynn Water & Sewer Commn.*, 423 Mass. 112, 115 n.6 (1996). The policy language, however, is explicit to the contrary, and speaks to "waves, tidal water," and "overflow of a body of water." The insurer decided how it wished to define surface water in this policy, and the definition it chose does not fit the facts of this case. This case has nothing to do with the ecosystem of natural bodies of water, such as natural watercourses or lakes. We note as well that the definition of surface water chosen by the judge includes "seepage," rendering it useless in this case.

[5]Massachusetts law certainly does not require a consumer to understand, much less formulate independently, the five pages of legal interpretation and analysis employed by the majority to justify Safety's denial of coverage. *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, 407 Mass. 689, 700-701 (1990).

to consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Hazen Paper Co.* v. *United States Fid. & Guar. Co., supra* at 700.

2. *Genuine issue of material fact.* The record below does not support summary judgment. Rather, it includes substantial evidence that there was hidden seepage and leakage that caused the resulting rot damage — which would thereby be rendered a covered loss. With respect to this evidence, the judge noted as follows:

> "It is undisputed that the water emanated from the outside and seeped or leaked in through the gap between the concrete patio and the rear wall of the house. The inspectors report that it was this gap and the placement of the patio, built sometime before Boazova purchased the property, that ultimately caused the damage.
>
> ". . .
>
> "The reports are clear, especially when read with the affidavits of the inspectors, that the water that caused the damage was rain and melting snow that essentially 'sat' on the foundation wall and ran along the surface of the patio on the outside of the house until it seeped into the sill and beyond. There is no other possible source of water that can be gleaned from the facts . . . ."

Not surprisingly, the parties differ in the language they use to describe what occurred; these semantic disputes track the language of the various ostensibly conflicting provisions of the policy. On this point, the report in the summary judgment record submitted by Safety's expert does not use the term surface water to describe the passage of water into the interior of the house. Rather, Safety's expert's report refers to surface water on top of the patio, "in the form of rain or snow falling onto the concrete patio at the rear of the house, running along the surface of the concrete patio to the rear wall of the house, and then running down into gaps and joints in the patio." Even if, as described by Safety's expert, water may have collected on the patio, and then moved as surface water above the patio and within patio

gaps, that does not demonstrate that the water met the policy's definition of surface water as it entered the house. Rather, as noted, from all that appears of record, the water leaked and seeped into the house interior. As the judge found, the water "seeped into the sill and beyond. There is no other possible source of water that can be gleaned from the facts . . . ." The plaintiff's expert's report does not speak of surface water moving into the house, but rather describes moisture "migrat[ing] down to the foundation."

At best, there is a genuine dispute whether the damage at issue was caused by water that "flowed," or "leaked," or "migrated," or "seeped." When the court considers the materials accompanying a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion." *Hub Assocs., Inc.* v. *Goode,* 357 Mass. 449, 451 (1970), quoting from *United States* v. *Diebold,* 369 U.S. 654, 655 (1962).

The grant of summary judgment was improper and should be vacated.