Agnes, Peter W., J.
Surabian Really Co., Inc. (Sur-abian) filed this action for breach of contract and unfair and deceptive acts and practices against NGM Insurance Company (NGM), for wrongful denial of coverage under Surabian’s businessowners insurance policy for property damage sustained to its premises. On October 12, 2010, NGM filed a motion for summary judgment declaring that the NGM policy issued does not afford coverage for the underlying damages, and entry of judgment with respect to Surabian’s claim for breach of contract, breach of implied covenant of good faith and fair dealing in violation of M.G.L.c. 176D and M.G.L.c. 93A, §§2 and 11, and indemnification against NGM. Surabian filed a cross motion for summary judgment on all counts of the complaint. For the reasons discussed below, NGM’s motions are ALLOWED.
BACKGROUND
The summary judgment record discloses the following undisputed material facts.
Surabian owns and operates commercial properties in Massachusetts and Rhode Island. The property at 17 Cocasset Street, Foxboro, Massachusetts (“the property”) is one of the properties owned and operated by Surabian. On Saturday, June 29, 2009, a rainstorm occurred in and around the area of the property. Surabian had 11 tenants who occupied the building including at least three tenants on the first floor and lower level. The first-floor tenants included Lori (Ganter) Broderick of Amara Health (a massage therapist), a chiropractor (Dan Bentz), and another massage therapist. Ms. Broderick, who was working on the property on that day, noticed that it began to rain heavily. Ms. Broderick telephoned Michael Sur-abian, a representative from Surabian Realty who managed the property, and informed him that water from the rain was not going down the drain, but instead, the water was entering the building.
The water flowing into the building eventually caused damage to the baseboards, walls, trim and floors. At the request of Surabian, Ms. Broderick called the fire department which arrived within approximately 30 minutes. The heavy rains continued while the fire department was at the property. The highway department arrived after the fire department and used a pump to remove the water from the parking lot. Ms. Broderick called the other lower level tenants, Dan Bentz and the other massage therapist, who were not at the property on the day of the incident. Ms. Broderick remained at the property until at least 10 p.m. by which time the highway department had left and water was no longer entering the building.
Surabian sought coverage under Businessowner policy No. BPP0181L with NGM to which NGM denied coverage based on several exclusions within the policy including sections B(l)(g)(l) and B(l)(g)(4).
B. Exclusions[1]
We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
g. Water
(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water or their spray, all whether driven by wind or not;
(2) Mudslide or mudflow;
(3) Water that backs up or overflows from a sewer, drain or sump; or
(4) Water under the ground surface pressing on, or flowing or seeping through:
(a) Foundations, walls, floors or paved surfaces;
(b) Basements, whether paved or not; or
(c) Doors, windows or other openings.
But if Water as described in B.l.g.(l) through B. 1 .g.(4), results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.
*49 Surabian also sought coverage under the OMNI Gold Endorsement to Businessowners Policy No. BPP0181L which also contained the following provision:
G. Water Backup
Paragraph B.l.g.(3) of the BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM is deleted and replaced by the following:
The most we will pay for loss or damage caused by water that backs up or overflows from a sewer, drain or sump is $25,000 for any one occurrence.
Two days after the incident, Surabian contacted its insurance agent, Anastasi Insurance, to report the claim. Andrew and Michael Surabian visited the property the Monday after the incident, but took immediate steps to remedy the damage to the property on the day of the incident. Michael Surabian contacted J. Brian Day Associates immediately after getting off the phone with Ms. Broderick and J. Brian Day Associates went to the property the day of the incident. At that time, the drain in the lower level parking lot was filled with water.
Surabian paid Catanzaro Enterprises $14,200.00, and J. Brian Day Associates $8,930.53 to repair damage to the property due to the damages on June 29, 2009. Surabian also paid Truax Corporation $295.00 to repair the drain subsequent to the damage on June 29, 2009.
In its present summary judgment motion, NGM argues that it has no duty to indemnify Surabian because the policy excludes coverage for damages resulting from the underlying loss. NGM also argues that it is entitled to entry of judgment in its favor with respect to Surabian’s claim for breach of contract (Count I), breach of implied covenant of good and fair dealing (Count II), violation of M.G.L.c. 176D (Count III), and violation of M.G.L.c. 93A, §§2 and 11 (Count IV) against NGM.[2] Plaintiff contends in its cross motion for summary judgment that the surface water exclusion does not apply to this case. Plaintiff also asserts that if it did, the anti-concurrent clause would unfairly create an ambiguity in the policy because exterior drain backups, such as the one in this case, almost always occur together with water from heavy rains.[3]
DISCUSSION
1.Standard of review
Summary judgment is granted where “the pleadings, depositions, answers to interrogatories and admission on file, together with affidavits, if any, shows no genuine issues in dispute and the moving party is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983); Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). When reviewing a motion for summary judgment, the court considers the evidence in the light most favorable to the non-moving party. Flynn v. City of Boston, 59 Mass.App.Ct. 490, 491 (2003). The moving party assumes the burden of affirmatively demonstrating that there is no issue of material fact on every relevant issue. Pederson, 404 Mass. 14, 17. Where the moving party establishes the absence of a triable issue, the pariy opposing the motion must respond and allege specific facts which would establish the existence of a genuine material fact for trial. Id.
2.Interpretation of an Insurance Policy
“The rules governing the interpretation of insurance contracts are the same as those governing the interpretation of any other contract.” Money Store/Massachusetts, Inc. v. Hingham Mut. Fire Ins. Co., 430 Mass. 298, 300 (1999). The interpretation of an insurance policy is not a question of fact for a jury, rather a question of law for the trial judge. Cody v. Connecticut General Life Ins. Co., 387 Mass. 142, 146 (1982). See also cases cited in Defendant’s Brief, Hirschfield v. Continental Casualty, 199 Ga.Ct.App. 654, 655 (1991); Doyleston Electrical Supply Co. v. Maryland Casualty Ins. Co., No. 96-632, 1996 WL 34393843, at *3 (E.D.Pa. Dec. 31, 1996). In addition, the interpretation of an exclusion clause within an insurance contract also presents a question of law. See Fuller v. First Financial Insurance, 448 Mass. 1, 5 (2006). Although the insured has the burden of establishing that the policy covers the loss, the burden shifts to insurer to establish that a loss is within the terms of an exclusion in the policy and that it is not covered. Boazova v. Safety Ins. Co., 78 Mass.App.Ct. 438 at *1 (2010).
Courts are guided by several principles when interpreting a contract, including, “the fair and reasonable meaning of the words in which the agreement is expressed.” Cody, 387 Mass. 142, 146; Boazova, 78 Mass.App.Ct. 438 at *1. “Although exclusionary clauses are viewed narrowly, ‘[w]e are not free to revise it or change the order of words.’ ” Boazova, 78 Mass.App.Ct. 438 at *2 (citing Finn v. National Union Fire Ins. Co. of Pittsburgh, Pa., 452 Mass. 690, 695 (2008), quoting from Continental Cas. Co. v. Gilbane Bldg. Co., 391 Mass. 143, 147 (1984).
“(T]he parties’ disagreement as to the proper interpretation of an insurance contract does not, in and of itself, create [ ] an ambiguity.” Macdonough v. United Services Automobile Association, quoting from Simon v. National Union Fire Ins. Co., 57 Mass.App.Ct. 350, 354 n.9 (2003). Once an insurance contract is free from ambiguiiy, “an exclusionary clause, like all the provisions must be given its usual and ordinary meaning.” FSS Automatic Sprinkler Corp. v. Tudor Ins. Co., No. 09-P-892, 2010 WL 3629579, at *2 (Mass.App.Ct. Sept. 21, 2010).
3.Coverage under policy
Whether a claim falls within a policy’s coverage or is barred by exclusion, is a question of law which *50 may be properly resolved by a court on a motion for summaryjudgment. B&T Masonry Const. Co., Inc. v. Public Service Mutual Ins. Co., 382 F.3d 36, 38 (1st Cir. 2004). See Finn v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania, 452 Mass. 690, 693 (2008).
Ordinarily, “recovery on an insurance policy is allowed ‘where the insured risk itself set into operation a chain of causation in which the last step may have been an excepted risk.’ ” Jussim v. Massachusetts Bay Ins. Co., 415 Mass. 24, 26 (1993). On the other hand, the insured is “foreclosed from invoking the chain of events rule,” where language in the policy plainly states, as in the present case, that the insurer will not indemnify losses resulting from an excluded event regardless of any “other cause or event contributing concurrently or in any sequence to the loss.” Id. at 26-31.[4]
In Jussim, fuel oil seeped through plaintiffs’ property as a result of one or more negligent acts, and caused damage to their basement. Jussim, 415 Mass. at 26. Plaintiffs’ policy insured against third-party negligence but was subject to a provision which excluded from coverage “loss . . . caused by . . . release, discharge or dispersal of contaminants or pollutants.” Id. The defendant contended that the loss was caused by the release of oil, which was an excluded event. Id. The court, however, rejected defendant’s contention, and affirmed the Superior Court’s decision in which plaintiffs were entitled to coverage and payment under the policy. Id. at 26, 30. Importantly, for purposes of this litigation, the court added that plaintiffs would have been “foreclosed from invoking the train of events rule” if the pollution exclusion clause had been listed under the general exclusion section. Id. at 31.[5]
Unlike the policy at issue in Jussim, Surabian’s businessowners policy excludes from coverage specific losses, including damage resulting from surface water. The policy contains the following exclusion:
g. Water
(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water or their spray, all whether driven by wind or not;
(2) Mudslide or mudflow;
(3) Water that backs up or overflows from a sewer, drain or sump; or
(4) Water under the ground surface pressing on, or flowing or seeping through:
(a) Foundations, walls, floors or paved surfaces;
(b) Basements, whether paved or not; or
(c) Doors, windows or other openings.
This exclusion means that since surface water damage is excluded, Surabian would be “plainly foreclosed from invoking the train of events rule.” Jussim, 415 Mass. at 31.
Massachusetts defines surface water as “water from rain, melting snow, springs, or seepage, or floods that lie or flow on the surface of the earth and naturally spread over the ground but do not form part of a natural watercourse or lake.” See Decantis v. Lynn Water Sewer Comm'n, 423 Mass. 112, 116 (1996). The term “surface water” is also used to describe water that occasionally accumulates from natural sources and that has not yet evaporated, percolated into the earth or found its way into a stream or lake." Central Mass Recycling, Inc. v. United Nat. Ins. Co., No. 000173, 2001 WL 179450, at *2 (Mass.Super.Ct. Jan. 3, 2001) [12 Mass. L. Rptr. 629).
In the present case, Surabian argues that the property was not damaged by surface water, but rather, was damaged by a backed-up drain. This reading of the policy by Surabian, however, disregards the terms of the policy which provides that “coverage for loss or damages caused by . . . surface water ... is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.” Both Surabian and NGM agree that damages were possibly caused in part by surface water, and water which backed up in the sewer. It was found that the water from the rain was not going down the drain and later entered the building causing damage to the first floor including the baseboards, walls, trim, and floors. This occurrence fits squarely within the definition of “surface water,” which leads to the conclusion that a portion of the damages were caused by surface water. Boazova, 78 Mass.App.Ct. 438 at *3 (“noting that the means by which the water entered the plaintiffs house, whether seeping, leaking, or some other form of aquatic migration, is not a separate cause of loss, nor does it transform the water into something other than surface water”), citing Solimine v. Massachusetts Property Ins. Underwriting Ass’n, 65 Mass.App. 782, 785-86 (2006), quoting from Jussim v. Massachusetts Bay Ins. Co., 415 Mass. 24, 30-31 (1993) (“water was the cause of loss regardless of how it entered the insured’s house”). Therefore, NGM is not obligated to indemnify Surabian for damages resulting from surface water and the backed-up sewer.
4. Interpretation of the Policy In Question
With regard to interpretation of the NGM policy, Surabian contends that the anti-concurrent clause is ambiguous. Surabian asserts this ambiguity was created by the anti-concurrent clause’s exclusion of any surface water claim. However, on its face, the language of the exclusion is plain and was meant to preclude payment for damages caused by surface water. Boazova, 78 Mass.App.Ct. 438 at *3. Surab-ian concedes that “the drain would not have backed up were it not for the appearance of surface water.” Given its position, Surabian should have understood that its business owner’s policy would not *51 cover the current loss, or any future losses caused by a similar event. Even if Surabian asserts, as in the instant case, that the OMNI Gold Endorsement policy covers damages caused by abacked-up sewer, surface water remains the original source of the damage. Thus, if surface water occurred anywhere in the chain of events leading to Surabian’s loss, it is not entitled to coverage. Boazova, 78 Mass.App.Ct. 438 at *3 (noting that “loss caused, in whole or part, by surface water is excluded regardless of any cause or event contributing concurrently or in any sequence of the loss”). Therefore, Surabian is not entitled to coverage because the language contained in the exclusion precludes payment for damages caused directly or proximately by surface water.
ORDER
What has been said disposes of all claims in this case. For the foregoing reasons, it is hereby ordered that the defendant’s motion for summary judgment is ALLOWED, and the plaintiffs motion for summary judgment is DENIED.

The exclusions are listed under Business Owner’s Special Property Coverage Form, Section B. The policy also contains other non-water related exclusions.

Because we conclude there is no coverage for Surabian’s loss under the policy in question, there is no need to reach these issues. However, it should be noted that “(a]n insurance company which in good faith denies a claim of coverage on the basis of a plausible interpretation of its insurance policy cannot ordinarily be said to have committed a violation of G.L.c. 93A.” MacDonough v. United Services Automobile Association, quoting from White v. American Casualty Ins. Co., 53 Mass.App.Ct. 66, 73 (2001). See also Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 468 (1995).

“Anti-concurrent clauses are used in insurance contracts to avoid application of the concurrent doctrine whereby a loss resulting from both a covered cause and a non-covered cause would lead to the conclusion that the loss covered the purpose of an anti-concurrent clause. Burke v. Foremost Ins. Co., No. 200300904A, 2004 WL3152179 at *4 (Mass.Super.Ct. 2004) [18 Mass. L. Rptr. 625], citing Alton v. Mfrs.& Merchants Mut. Ins. Co., 416 Mass. 611, 613-15 (“holding that anti-concurrent language in an insurance contract could operate to exclude coverage”); Jussim v. Massachusetts Bay Ins. Co., 415 Mass. 24, 30-31 (1993) (“suggesting that anti-concurrent language in an insurance contract could operate to exclude coverage”). The purpose of an anti-concurrent clause is to exclude coverage in this situation by expressly stating the loss that is not covered.” Id.'

The law in other jurisdictions is generally in accord with Jussim. See Front Row Theatre, Inc. v. American Manufacturers Mutual Insurance Companies, 18 F.3d 1343, 1347 (6th Cir. 1994) (noting that “when damages to an insured’s property are caused by both a covered and an excluded event, coverage may be expressly precluded by language in the policy”). See also Leonard v. Nationwide Mut. Ins. Co., 499 F.3d 419 (5th Cir. 2007); Cooper v. American Family Mut. Ins. Co., 184 F.Sup. (D.Ariz. 2002).

The “train of events” rule is a well established principle that has been used by courts to resolve coverage controversies in chain causation cases. Jussim, 415 Mass. at 27. The test seeks to determine the “efficient proximate cause of the loss” and covers an insured’s loss, even though the final form of property damaged which resulted from a series of related events appears to take the loss outside of the terms policy. Id.