Ferrara, John S., J.
Plaintiffs Jonathan and Tammy Hall[2] brought this action seeking declaratory judgment with respect to the insurance policy they hold with Preferred Mutual Insurance Company (“Preferred Mutual”). Additionally, plaintiffs seek damages for invasion of privacy, breach of contract, and unfair and deceptive business practices. Defendant moves to dismiss under Mass.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. Because defendant’s motion alludes to matters outside of the pleadings, there are no disputed issues of material fact as to the declaratory judgment claim, and no party has an objection, defendant’s motion will be treated as a motion for summary judgment.
Plaintiffs, in opposition to defendant’s motion to dismiss, cross move for summary judgment with respect to their claim for declaratory judgment.
In accordance with the discussion below, defendant’s motion is DENIED, and plaintiffs’ cross motion is ALLOWED with respect to Count I of their complaint, seeking declaratory judgment.
BACKGROUND
The parties do not dispute the following facts. Plaintiffs Jonathan and Tammy Hall own residential property located at 225 Durant Street in Springfield (the “property”). They purchased insurance covering the real and personal property at that address from defendant Preferred Mutual, a New York company with its principal place of business at One Preferred Way, New Berlin, New York. The Preferred Mutual policy of homeowners insurance (the “policy”) identifies the insureds as Jonathan Hall and Tammy Hall on its declarations page. The policy generally follows the standard form policy as set forth in G.L.c. 175, §99 (Twelfth), but deviates from that standard policy in some material respects, which are discussed below.
On November 18, 2013, Bryan Hall, the adult son of Jonathan and Tammy, intentionally started a fire, causing significant damage to the real and personal *683 property of the residents in the home. Jonathan and Tammy were not immediately aware that Biyan was responsible for causing the fire. The real and personal property was insured under the Preferred Mutual policy. On the day of the fire, plaintiffs notified Preferred Mutual of the fire and loss and Preferred Mutual responded by providing an advanced payment of $5,000.00.
Biyan Hall reported to police that some of his personal property had been stolen from the home. Prior to starting the fire, Biyan had secured a separate renter’s insurance policy. It is undisputed that Biyan caused the fire with the intent to recover insurance proceeds from that renter’s policy. It is unclear on the facts presented whether or not he knew his personal property was also covered under the Preferred Mutual policy, or that he intended to defraud Preferred Mutual specifically. On November 20, 2013, Biyan Hall gave a recorded interview to Preferred Mutual and stated that he suspected the fire may have been started by his former girlfriend, and falsely claimed that some of his personal properly had been stolen.
On January 10, 2014, counsel for Preferred Mutual sent letters to Jonathan, Tammy, and Biyan Hall, requiring each of them to submit to an examination under oath and demanding that each produce specified documents and records. In accordance with Preferred Mutual’s demand, Jonathan and Tammy Hall delivered copies of their 2011 and 2012 tax returns and executed releases for bank and credit card accounts. In further response to the letter, the Halls had a family meeting regarding the fire during which Biyan admitted to having started the fire. They agreed that Biyan’s actions must be disclosed at the examinations under oath.
On Januaiy 29 and January 30, 2014, counsel for Preferred Mutual examined Jonathan and Biyan. Biyan admitted that he had started the fire and Jonathan disclosed that Biyan had admitted his role to his parents earlier that month.
On February 10, 2014, Preferred Mutual notified the Halls that their claim for loss due to the fire was denied under the policy. The present action was filed in Superior Court on October 10, 2014.
DISCUSSION
Summaiy judgment is a “device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.” Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983), quoting Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). Summaiy judgment is granted when there is no genuine issue of material fact and that the summary judgment record entitles “the moving party to judgment as a matter of law.” Mass.R.Civ.P. 56(c); Cassesso, 390 Mass. at 422. The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 715-16 (1991). Once the moving party makes this showing, the burden shifts to the opposing party to show, via admissible evidence, the existence of a dispute as to an issue of material fact relevant to the asserted claim. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989); Mass.R.Civ.P. 56(e).
“When facing cross-motions for summaiy judgment, a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56.” Dan Barclay, Inc. v. Stewart & Stevenson Servs., Inc., 761 F.Sup. 194, 197-98 (D.Mass. 1991). The material facts in this case are undisputed, and it is therefore appropriate to resolve such claims as can be resolved on summary judgment.
A. Claim for Declaratory Judgment
1. Standard of Review of Insurance Policy Exclusion
“ITlhe rules governing the interpretation of insurance contracts are the same as those governing the interpretation of any other contract.” Money Store/Mass., Inc. v. Hingham Mat. Fire Ins. Co., 430 Mass. 298, 300 (1999), quoting Cardin v. Royal Ins. Co. of America, 394 Mass. 450, 453 (1985). The interpretation of an insurance policy is not a question of fact for a jury, rather a question of law for the trial judge. Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (1982). Moreover, the interpretation of an exclusion clause within an insurance contract also presents a question of law. See Fuller v. First Fin. Ins., 448 Mass. 1, 5 (2006). Although the insured has the burden of establishing that the policy covers the loss, the burden shifts to the insurer to establish that a loss is within the terms of an exclusion in the policy and that it is not covered. Boazova v. Safety Ins. Co., 78 Mass.App.Ct. 438, 440 (2010).
Courts are guided by several principles when interpreting an insurance agreement, including “the fair and reasonable meaning of the words in which the agreement is expressed.” Cody, 387 Mass. at 146; Boazova, 78 Mass.App.Ct. at 440. However, “that approach is less sound when, as here, the content of a policy is substantially dictated by statute, and the form of the policy is reduced to a standard one. We are to read the policy so that it is consistent with what the statute prescribes” (citations omitted). Plymouth Rock Assur. Corp. v. McAllpine, 32 Mass.App.Ct. 755, 757 (1992), quoting Amica Mut Ins. Co. v. Bagley, 28 Mass.App.Ct. 85, 90 (1989).
In general, an exclusionaiy clause is construed narrowly, Boazova, 78 Mass.App.Ct. at 440, but “[bjecause the language of the standard policy is prescribed by statute and controlled by the Division of *684 Insurance rather than the individual insurer, the rule of construction resolving ambiguities in a policy against the insurer is inapplicable . . . Instead we must ascertain ‘the fair meaning of the language used, as applied to the subject matter’ ” (citation omitted). Bilodeau v. Lumbermens Mut. Cas. Co., 392 Mass. 537, 541 (1984), quoting Save-Mor Supermarkets, Inc., v. Skelly Detective Serv., Inc., 359 Mass. 221, 226 (1971).
2.Language of the Policy
The policy defines the term “insured” as “(a) ‘you’; (b) ‘your’ relatives if residents of ‘your’ household; (c) Persons under the age of 21 residing in ‘your’ household and in ‘your’ care or in the care of ‘your’ resident relatives . . .” The parties do not dispute that under this definition, Jonathan and Tammy are both “insured.” The parties also agree that this definition includes Biyan because he is a relative of a named “insured” and a resident in the home covered under the policy.
The parties further agree that the plain language of the policy excludes coverage for fire damage where the “loss . . . results from any act committed by or at the direction of any ‘insured’ . . .” Biyan is an “insured” by definition and, accordingly, this exclusion applies to his intentional acts. The parties do not dispute that Biyan intentionally started the fire that caused the loss at issue in this case. Thus, based on “the fair and reasonable meaning of the words in which the agreement is expressed,” the plain language of the policy unambiguously excludes coverage for the Halls under the circumstances. Cody, 387 Mass. at 146.
3.Massachusetts Standard Policy
The analysis does not end here, however, because insurers may not limit coverage for fire damage beyond what is permitted by statute. G.L.c. 175, §99 (“No company shall issue policies or contracts which . . . insure against loss or damage by fire ... to properly or interests in the [C]ommonwealth, other than those of the standard forms herein set forth ...” [inapplicable exceptions omitted]). The court must examine the language of the standard fire insurance policy and the relevant statutoiy scheme to determine whether Preferred Mutual may exclude coverage under the circumstances. See Amica Mut. Ins. Co. v. Bagley, 28 Mass.App.Ct. 85, 90 (1989). See also Surrey v. Lumbermens Mut. Cas. Ins. Co., 384 Mass. 171, 172-73 (1981).
The purpose of the statutoiy standard fire policy in the Commonwealth is to ensure consistency of coverage. “[LJegislation governing the standard form of fire insurance policy in Massachusetts was first enacted in 1873, and became mandatory in 1881, this apparently in the aftermath of the great Boston fire, when it became evident that uniformity in policy provisions was lacking but desirable.” Ideal Fin. Servs. v. Zichelle, 52 Mass.App.Ct. 50, 53 (2001). The original standard policy under G.L.c. 175, §99, was modified to reflect contemporary national trends in 1951, when the Legislature “adopted a statutoiy policy based upon what is known in the insurance field as the ‘standard policy,’ a form originally adopted in New York in 1943.” In-Towne Restaurant Corp. v. Aetna Cas. & Sur Ins. Co., 9 Mass.App.Ct. 534, 540 (1980). The standard policy provides protection to policyholders who may otherwise be subject to arcane and esoteric, albeit unambiguous, liability exclusions. See Cardin, 394 Mass. at 453 (“[T]his is not a typical arms’ length contract; it is one mandated by statute and reduced to a form standardized across the Commonwealth . . . Therefore, no matter how explicit the exclusionary language may be, it cannot prevail if it is contrary to the statutoiy language or the legislative policy . . .”). Cf. Surrey, 384 Mass. at 177 (“We believe it is wholly inconsistent with this broad remedial purpose to permit the insurer to evade mandated coverage by erecting an artificial, arbitrary barrier to recovery”).
Several liability exclusions are explicitly included in the standard policy, allowing insurers to deny coverage under specific circumstances. G.L.c. 175, §99 (Twelfth). For example, “neglect of the insured to use all reasonable means to save and preserve the property at -and after a loss” may be grounds for denial of coverage, in addition to cases where “the hazard is increased by any means within the control or knowledge of the insured.” Id. Moreover, in the plain language of the statute, the policy “shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto” (emphasis added). Id.
The statutoiy language precludes coverage due to Biyan’s conduct if, and only if, he falls within the statutoiy definition of “the insured.” By intentionally causing damage to his home, Biyan neglected “to save and preserve the property,” he increased “the hazard” to the property by “means within his control,” and, under oath, he “misrepresented . . . material fact[s] and circumstance^] concerning” the cause of the fire. Id. If, however Biyan is not within the definition of “the insured,” the parties do not dispute that Jonathan and Tammy are entitled to coverage. Unfortunately, the standard policy does not provide a definition of “the insured,” despite the term’s appearance several times throughout the statute. Id. Whether the Halls are entitled to coverage is entirely dependent on the correct interpretation of this term.
4.Innocent Co-insured Doctrine
Preferred Mutual argues that, in the context of G.L.c. 175, §99, “the insured” refers to all people entitled to coverage under the standard policy. The argument relies primarily on the continued recognition by Massachusetts courts of the right of insurance companies to deny coverage to an innocent co-insured in cases where the intentional misconduct of an in *685 sured causes damage to property covered by an insurance policy. See Kosior v. Continental Ins. Co., 299 Mass. 601, 604 (1938) (“We think the policy in question was j oint and that the plaintiff cannot recover. The act of her husband in burning the insured buildings was an act of the ‘insured,’ and as such it was a fraud upon the defendants which rendered the policies void in accordance with their terms”). This argument, however, requires an expansive reading of Kosior and its progeny.
Defendant cites USF Ins. Co. v. Langlois, 86 Mass.App.Ct. 44, for the proposition that an innocent co-insured is barred from recovery by the acts of a joint policyholder. See id. at 47. The court’s analysis in Langlois only follows the rule in Kosior that, where “the co-insured’s interests in an insurance policy are joint and non-severable, the innocent co-insured may not recover fire insurance after the blamable co-insured intentionally burned the covered property.” Langlois, 86 Mass.App.Ct. at 47. The presumption that the insured share joint obligations under an insurance policy is rooted in a joint and non-severable interest in the property. Id. See Richards v. Hanover Ins. Co., 250 Ga. 613, 614 (1983) (“Most of the older cases denied recovery to an innocent co-insured spouse on the theory that spouses who hold joint interests in insured property have a joint obligation to refrain from defrauding the insurance company so that the fraud of one spouse necessarily becomes the fraud of the other” [citing Kosior, 299 Mass. at 603-04] [emphasis added]). But cf. Yerardi v. Pacific Indem. Co., 436 F.Sup.2d 223, 248 n.10 (D.Mass. 2006) (‘The issue whether there is joint ownership of the land does not seem to be controlling in Kosior. Rather, it is the fact that the insurance policy was a joint policy which was critical to the court’s conclusion” [citing Kosior, 299 Mass. at 604]).
In this case, however, Preferred Mutual does not argue that Bryan holds a joint and non-severable interest in his parents’ properly, nor that his interest in the policy was co-extensive with that of his parents. Therefore, it is not clear that under the Kosior holding, Bryan’s intentional acts should be imputed to Jonathan and Tammy to limit the availability of coverage.
Furthermore, Kosior is not dispositive as to the intent of the Legislature in enacting the standard fire insurance policy, G.L.c. 175, §99. See Yerardi, 436 F.Sup.2d at 247 (“[I]t is unclear whether Massachusetts statutory law mandates coverage for innocent co-insureds . . .”). Legislatures in other states have allowed coverage for innocent co-insureds under their respective statutory standard fire policies. See, e.g., Lane v. Security Mut. Ins. Co., 747 N.E.2d 1270, 1272 (N.Y. 2001); Sager v. Farm Bureau Mut. Ins. Co., 680 N.W.2d 8, 14 (Iowa 2004). Despite the fact that Kosior is still good law in the Commonwealth, I do not find it controlling as to whether Bryan’s conduct may prevent Jonathan and Tammy from recovering under the insurance policy.
5. Interpretation of the Standard Policy
The intent of the Legislature must be assessed under “the fair meaning of the language used, as applied to the subject matter.” Bilodeau, 392 Mass. at 541, quoting Save-Mor Supermarkets, Inc., 359 Mass. at 226. By permitting insurance companies to include a term denying coverage to “the insured” where the intentional conduct of “the insured” caused the fire, the Legislature intended to allow insurers to exclude coverage in some cases. It is not clear whether the Legislature intended to allow for the exclusion of all individuals covered under the policy due to the intentional acts of any one covered individual; the Legislature chose to use the term “the insured” in lieu of a more inclusive term, such as “any insured,” or a more restrictive term, such as “named insured.” See Jacobs v. United States Fid. & Guar. Co., 417 Mass. 75, 78 (1994) (“ ‘Named insured’ has a clear and explicit meaning. It is the individual or entity who is listed on the declarations page”).
The Massachusetts standard policy, while based on the New York standard policy, is not identical to it. The use of the term “the insured” and the relevant exclusions are the same in both states. Deviations from the New York standard policy must be construed as intentional. See In-Towne Restaurant Corp., 9 Mass.App.Ct. at 540-41 (“[W]e cannot consider the omission of this clause to be accidental”). Likewise, it is prudent to interpret similarities with the New York statute as reflecting the Legislature’s intent that the terms be interpreted similarly. The standard policy as it appears across the country should be interpreted with deference to the interpretation of other states. Pappas Enters. v. Commerce & Indus. Ins. Co., 422 Mass. 80, 82-83 (1996) (“We decline to interpret language used in a national standard policy to have a special Massachusetts meaning simply because of an implication that could be derived from an uncertain legislative history”). Because the Legislature chose some but not all provisions, we can assume that the similarities are likewise intentional.
Furthermore, an overly inclusive interpretation of “the insured” would lead to the potential for absurd limitations on coverage. See Botello v. Massachusetts Port Auth., 47 Mass.App.Ct. 788, 791 (1999) (“We do not attribute to the Legislature a statutory scheme leading to an absurd result”). For example, a fire insurance policy by its terms could cover the property of all individuals who enter the property lawfully, and thus the exclusion could apply when a guest or worker is permitted on the properly and commits arson to conceal their commission of another crime. This construction would not serve the purpose of the standard policy. See Cardin, 394 Mass. at 453. While the interpretation pursued by Preferred Mutual is not absurdly *686 broad to this degree, it is nonetheless clear that the Legislature intended that the term be bounded.
For more insight into the meaning of the term in the context of the standard policy, it is helpful to examine other instances in which the term appears. The statute provides that “(t]he policy shall be cancelled at any time at the request of the insured . . .” G.L.c. 175, §99 (Twelfth). It is unlikely that the Legislature intended for a policyholder’s adult resident son to have the power to cancel the policy at his own election and collect a pro rata refund of the premium. The Legislature apparently did not intend the meaning of the term “the insured” to include all persons whose property was protected by a policy. While it is not exceedingly clear whom the Legislature intended to include in the meaning of the term, it appears that Bryan was not meant to be “the insured” under the meaning of the standard policy.
B. Additional Claims
In counts 2, 3, and 4 of their complaint, Jonathan and Tammy have claimed that Preferred Mutual is liable for an unlawful invasion of their privacy, breach of contract, and violation of the Massachusetts Consumer Protection Act. There are genuine issues of material fact as to whether Preferred Mutual’s demand for tax returns, credit card statements, and “27 categories of documents for examination and copying”[3] from six persons residing at the premises, including a minor, was permissible and reasonable under the policy requirement that the Halls cooperate with investigative proceedings upon the occurrence of a loss, or constituted an unlawful invasion of privacy or a breach of contract. There are also genuine issues of material fact as to whether or not Preferred Mutual’s investigative efforts and denial of coverage constituted unfair or deceptive business practices under G.L.c. 176D, §3.
ORDER
For the foregoing reasons, it is hereby ORDERED:
(1) that defendant’s motion for summary judgment is DENIED: and
(2) that plaintiffs’ cross motion for summary judgment is ALLOWED with respect to Count I of plaintiffs’ complaint seeking declaratory judgment.
It is therefore ORDERED that a declaration enter that the insurance policy issued by Preferred Mutual is in violation of G.L.c. 175, §99, and that plaintiffs are entitled to payment of benefits under the policy of insurance in accordance with the terms of the insurance policy for damage to their personal and real property and for the loss of use of their residence.

 Individuals in the Hall family will be referenced by first name throughout this discussion to avoid confusion.

 Plaintiffs 93A demand letter, appended to their Complaint as Exhibit D.